M. NOYES AND COMPANY v. THE RUTLAND AND BURLINGTON RAILROAD COMPANY.

*Railroad companies.    Common carriers.    Liability of corporations.*

Railroad companies, as common carriers, may make valid contracts to receive freight at, or to convey it to points beyond the limits of their own road; and thus become liable for the acts and neglects of other carriers, not under their control.

Corporations cannot adopt the acts of their agents, in reference to matters not altogether beyond the general objects of their incorporation, but which would be embraced within a liberal construction of them, so long as they are beneficial; and when otherwise, shield themselves from responsibility by resorting to a more limited and literal construction of their corporate powers.

ASSUMPSIT. In October, 1852, the defendants contracted with the plaintiffs to transport for them to the city of Troy, N. Y. from Burlington, Mallett's Bay, Georgia, St. Albans Bay and Highgate,

certain quantities of hay, which the plaintiffs had at those places, at certain specified rates per ton, varying with the localities at which the hay was to be received. The defendants agreed to transport the hay from the above mentioned places with reasonable despatch, and to send their barges for the hay to the points north of Burlington upon reasonable notice. The plaintiffs claimed damages for the neglect and refusal of the defendants to receive and transport a part of said hay, and for their not transporting another portion of it with reasonable despatch.

Neither of the above mentioned places, with the exception of Burlington, were on the line of the defendants' railroad; and the defendants contended that they were not bound by the contract in reference to the hay, beyond the limits of their road; and that they had no authority under their charter, to make a contract to transport the hay by boats, &c.

The county court, November Term, 1854,— PECK, J., presiding,— decided that the contract was binding as to all the hay, and rendered judgment for the plaintiffs. Exceptions by the defendants.

*D. A. Smalley, B. Rixford,* and *Phelps & Chittenden* for the defendants.

*J. Maeck* and *Peck & Harvey,* for the plaintiffs.

The opinion of the court was delivered by

REDFIELD, CH. J. It seems to be now well settled, that railroad companies, as common carriers may make valid contracts to carry beyond the limits of their own road, either by land or water, and thus become liable for the acts and neglects of other carriers, in no sense under their control. *Muschamp* v. *L. & P. Junction R. Co.,* 8 M. & W. 421. *Weed* v. *Saratoga & Schenectady R. Co.,* 19 Wendell, 534. *Farmers & Mechanics Bank* v. *Champ. Trans. Co.,* 23 Vt. 186.

It has never been questioned that carriers, whether natural or artificial persons, might by usage or contract bind themselves to deliver parcels and merchandise beyond the strict limits of their

line in town and country; and in such case could only exonerate themselves by a personal delivery, 23 Vt. 186, and cases there cited.

It seems to us, in principle, that these two propositions control the present case; for if a railroad company may contract for carrying merchandise and parcels beyond the limits of their line, where the carriage is by porters, stages, by steamboats or other water-craft, or by other railroads, and this is to be justified upon the ground of usage and convenience, or common understanding and consent, the same rule of construction must equally extend to contracts to receive freight at points on the line before it reaches the company entering into the contract. It may be true, in one sense, that this is extending the duties and powers of the company beyond the strictest interpretation of the words of their charter. But the time is now past, when, as between the company and strangers, any such literal interpretation of the charter is attempted to be adhered to. It is true, that such corporations, even as to strangers, are not allowed to assume obligations altogether beyond the general objects of their incorporation, as if they should assume to build steamboats, or other railroads, perhaps. But within the general business of their creation, a very considerable latitude is allowed in contracts with strangers. This is done for the advantage of the company, as well as others, and to avoid embarrassments in the common business of life, which must be constantly liable to occur, upon any such limited construction of the powers of corporations, as is contended for by the plaintiffs below. These corporations are now held liable for a nuisance, in obstructing highways;—for damages, in consequence of a departure from the ordinary and safe mode of constructing their embankments, although attempted, in that form, to aid a manufacturing interest, by making the embankment serve the double purpose of a dam, and embankment for the track of the road;—and in many other cases, where, if the stockholders had interfered, in the first instance, the agents of the company would have been restrained from doing the acts in the name of the company. But if the corporators acquiesce in the extension of the business of the company, even beyond the strict limits of its charter, upon the most literal interpretation, and strangers are thereby induced to contract, upon the faith of the authority of the agents of

such companies, the companies are not at liberty to repudiate the authority of such agents, when their transactions prove disastrous.

This principle is strikingly illustrated by the false issues of stock by the directors of companies, even beyond the limit of their charters, which the courts have attempted generally to maintain, even by the necessary finesse of lessening the nominal value of the other genuine shares, which is certainly carrying the matter to the very extreme of reason and sound logic. But of the soundness of the general principle, to the extent of the present case, we think there is no possible question. If this company can assume to carry freight from Burlington to New York, so they may equally from Highgate to Troy, and New York. The case of *Jordan* v. *Fall River R. Co.*, 5 Cushing, 69, is a well considered case, and precisely in point. Cases like that of *Livingston* v. *Lynch et al.*, 4 Johns. Ch. 573, and many others which concern the power of the majority to compel the minority to the extension of the business of the company beyond its constitutional limits, have no proper bearing upon the present question. The *point blanc* question here is, whether the company, by its agents, and the consent of its corporators, shall continue to carry on its business in any given mode, not contrary to the general course of business in the vicinity, so long as it prove profitable to the company, and when any disaster occurs, be allowed to shield themselves from liability, by a resort to the most literal construction of their charter powers, which they had themselves extended, by a liberal construction of its terms? It would seem that there could be but one answer; and such is the uniform current of the more recent decisions of the courts upon the subject. Judgment affirmed.