156    SUPREME COURT OF WISCONSIN.    [Jan.

W. H. Aton Piano Co. v. Chicago, M. & St. P. R. Co. 152 Wis. 156.

W. H. Aton Piano Company, Respondent, vs. Chicago, Milwaukee & St. Paul Railway Company, Appellant.

*January 9—January 28, 1913.*

*Carriers: Interstate commerce: Contract: Liability of initial carrier: Switching: Bills of lading.*

1. Where a shipper delivered a loaded car to one railway company with instructions to ship it *via* another road to a point in another state, and the company to which the car was so delivered received it without objection to the instructions and put a routing tag upon it, this constituted a complete contract of interstate transportation, although the company so receiving the car merely transported or switched it from its own yard to the yard of the other company in the same city, and the portion which it received of the entire freight charge was denominated the "reciprocal switching charge."

2. The Carmack amendment to the interstate commerce act (34 U. S. Stats. at Large, 595, ch. 3591) applies to all cases where a carrier receives·goods under an agreement, oral or written, for their transportation to another state; and the failure of such carrier to issue a bill of lading as therein required will not relieve it from the liability imposed by the act.

3. Nor will the duties and liabilities of the initial carrier, which have become fixed by the making of the contract, be affected by the fact that the shipper afterwards obtains a bill of lading from another carrier.

Appeal from a judgment of the circuit court for Sauk county: E. Ray Stevens, Circuit Judge. *Affirmed.*

This is an action to recover for damage to a carload of pianos which were injured in transit from Milwaukee to Harvard, Illinois. The pianos were bought by the plaintiff of the Waltham Piano Company of Milwaukee, and were loaded on the car and delivered by the last-named company to the defendant company October 26, 1911. The car was transported by the defendant from one of its freight yards, called the Gibson yard, situated just north of the city limits of the city of Milwaukee, about fifteen miles to the Airline yard of the

Chicago & Northwestern road at Milwaukee, where it was delivered to the Chicago & Northwestern road and transported by that company to Harvard, Illinois. The entire freight charge was $33.50, of which sum the defendant received $3, which is called by the railroad companies the "reciprocal switching charge." The Waltham Piano Company's factory has a switch track connecting with the Gibson yard, and the car in question was loaded at the factory on the switch track.

It appears by the evidence that after the car was loaded the shipping clerk of the Waltham Company took his shipping book, consisting of blank bills of lading, and delivered the car to the receiving clerk of the defendant company at the Chestnut street station, and also gave him directions to ship the car to Harvard, Illinois, and the receiving clerk put a routing tag on the car in accordance with this direction.

The shipping clerk also presented to the defendant's receiving clerk the shipping book. In this book there seem to have been two bills of lading, identical in terms, filled out with the name of the consignee, the destination of the goods, the route "via N. W. line," the number of the car, and a description of the pianos. Both bills had in pencil on the top line, "C. N. W. Railroad Company," but this was no part of the receipt.

The shipping clerk presented the book to the defendant's agent, who stamped upon it the following receipt: "Received by the Chi. Mil. & St. P. Ry. at Chestnut street station, Milwaukee, October 26, 1911. E. F. Rummel, Agent, per ——."

The testimony tends to show that after putting the receiving stamp on he saw the letters "C. N. W." penciled at the top and then wrote "Void" in ink over the receipt stamp, and handed the book back to the shipping clerk. There is no evidence that the shipping clerk knew of this attempted obliteration of the receipt. He took the book back to the Waltham Company's office. At a subsequent time, and apparently on the following day, an employee of the Waltham Company pre-

sented the shipping book to the agent of the Chicago & North-western Railway Company at the Pabst yard, Milwaukee, and that agent stamped the following receipt upon the other or duplicate bill above described: "Received at Milwaukee, Wis. Pabst Yard, C. & N. W. Ry. Not responsible beyond the Terminal Station on this line. October 27, 1911. Subject to conditions of local freight tariffs and company's bill of lading. D. B. Curtis, Agent." Also the following words just below the above receipt: "Subject to delivery by C. M. & St. P. Ry." The reason for the obtaining of this receipt from the Northwestern Company does not appear. The car was delivered at Harvard with the pianos in a damaged condition.

Upon substantially this evidence the trial court held that the defendant was liable for the damage, and only submitted to the jury the question of the amount of the damage. The jury having fixed the amount at $775, judgment was rendered for the plaintiff for that sum, and the defendant appeals.

For the appellant there was a brief by *C. H. Van Alstine, H. J. Killilea,* and *Rodger M. Trump,* and oral argument by *Mr. Trump* and *Mr. Van Alstine.*

For the respondent there was a brief by *Grotophorst, Evans & Thomas,* and oral argument by *E. A. Evans.*

WINSLOW, C. J. The trial judge directed judgment for the plaintiff because he considered that the undisputed evidence made the defendant an initial carrier of an interstate shipment of freight within the so-called Carmack amendment to the interstate commerce act. This amendment, passed June 29, 1906 (34 U. S. Stats. at Large, 595, ch. 3591), reads as follows:

"That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful

holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transporation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company, from the liability hereby imposed. Provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law.

"That the common carrier, railroad, or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained the amount of such loss, damage, or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof."

We can see no ground to quarrel with the conclusion of the trial judge. The evidence is undisputed to the effect that the Waltham Company delivered the loaded car to the defendant company with instructions to ship it to Harvard, Illinois, *via* the Northwestern road, and that the defendant received the car without objection to the instructions and put a routing tag upon it. This transaction constitutes a complete contract of interstate transportation. When such a contract is made the carrier is required by the Carmack amendment to issue a bill of lading, but the failure of the carrier to obey the law in this respect will not relieve it from the liability imposed by the act. The law was intended to operate in all cases where a carrier receives goods under an agreement, oral or written, for their transportation to another state. The carrier cannot defeat its effect by violating a mere detail requirement. *International W. Co. v. D., L. & W. R. Co.* 80 N. J. Law, 553, 78 Atl. 49.

It seems equally plain that the shipper cannot defeat the law by subsequently obtaining a bill of lading from another

carrier.   The first transaction has already settled the relation between the owner of the goods and the carrier, and fixed the duties and liabilities of the carrier to such owner.   A contract afterwards entered into between the shipper and another carrier manifestly cannot affect these duties and liabilities.

It is claimed by counsel for the appellant company that it acted merely in the capacity of a local expressman or drayman in delivering the pianos to the Northwestern Company for carriage to another state, and that the interstate carriage did not commence until the Northwestern train moved out of the Airline yard in the direction of Harvard.

Doubtless a contract of that nature might have been made by the Waltham Company with the defendant, but the difficulty is that the evidence shows that an entirely different contract was in fact made, namely, a contract of interstate carriage.

A company operating a mere switching railway, transporting cars to and from trunk lines upon the basis of a division of profits, may be an interstate carrier.   *U. S. v. Union S. Y. & T. Co.* 226 U. S. 286, 33 Sup. Ct. 83.

*By the Court.*—Judgment affirmed.