(May 24, 1916.)

## C. W. BARRETT and G. L. BARRETT, Partners Doing Business as BARRETT BROTHERS, Respondents, v. NORTHERN PACIFIC RAILWAY COMPANY, a Corporation, Appellant.

[157 Pac. 1016.]

INTERSTATE COMMERCE ACT—CARMACK AMENDMENT—INITIAL CARRIER — LIABILITY OF — PRESUMPTION AS TO CONDITION OF SHIPMENT — UNLIQUIDATED DAMAGES—INTEREST.

1.  Under the Carmack Amendment to the Interstate Commerce Act of Congress, 34 Stats. at Large, 594, Fed. Stats. Ann., Supp. 1909, 273, a common carrier which receives goods for transportation from a point in one state to a point in another, if it routes the consignment over the line of another common carrier, makes the latter its agent, and is liable to the owner of the goods or his assigns, for any damage which results from negligence or carelessness in transportation, whether the damage occurs upon its own line or upon that of the carrier to which it delivers the consignment.

2.  An initial carrier is not liable for damage to goods occurring on lines not its own and over which they were routed without notice to it. The obligation of such a carrier ceases when the goods reach the destination, in good condition, to which they were originally consigned.

3.  Although the law expressly requires a common carrier to issue a receipt or bill of lading for goods accepted for transportation from one state into another, it is not necessary to the right of the shipper to recover for loss or damage to the shipment that it do so.

4.  A common carrier which receives goods for interstate shipment is the initial carrier, although it only switches the car in which they are loaded to the lines of another common carrier to be transported out of the state.

5.  Where the evidence shows that when goods were originally loaded they were in good condition and were properly loaded, the presumption is that they remained in that condition until the contrary is shown.

On the question of liability of connecting carrier for loss beyond its own line, see notes in 31 L. R. A., N. S., 1; 41 L. R. A., N. S., 1064.

As to constitutionality of statute making bill of lading conclusive proof of receipt of property, see note in 22 L. R. A., N. S., 821.

6. Where a claim is for unliquidated damages, the amount of which is not susceptible of ascertainment by computation or by reference to market values, the claimant is not entitled to interest prior to judgment.

[As to liability of initial carrier for torts or negligence of connecting lines, see note in 106 Am. St. 604.]

APPEAL from the District Court of the Fourth Judicial District for Lincoln County. Hon. Chas. O. Stockslager, Judge.

Action for damages. Judgment for plaintiffs. *Modified and affirmed.*

E. J. Cannon and D. Worth Clark, for Appellant.

"An initial carrier is the carrier first receiving the goods." (4 Words and Phrases, p. 3610; *Beard v. St. Louis, A. & T. H. Ry. Co.,* 79 Iowa, 527, 44 N. W. 803.)

The mere changing of the destination en route cannot alter the character of the shipment and make it an initial or original shipment at the point where such change in destination is made. (*Dunlap v. Great Northern R. Co.,* 34 S. D. 320, 148 N. W. 529.)

The initial carrier is the carrier which originally receives the goods for transportation. (*Atlantic Coast Line R. Co. v. Riverside Mills,* 219 U. S. 186, 31 Sup. Ct. 164, 55 L. ed. 167, 31 L. R. A., N. S., 7.)

Under the testimony in this case it is conclusively shown that either the C. B. & Q. or the O. W. R. & N. was the initial carrier, and in order to take advantage of the provisions of the Carmack Amendment plaintiffs were required to proceed against one of those companies, and cannot now recover from appellant without proving conclusively that it alone was responsible for the loss and damage sustained by them. (*Eastern Ry. Co. v. Montgomery* (Tex. Civ.), 139 S. W. 885.)

P. S. Haddock, for Respondents.

The liability of the initial carrier cannot be extended beyond the contract evidenced by the bill of lading, and that is, to

deliver the shipment at the place of destination named therein. (*Parker-Bell Lumber Co. v. Great Northern R. Co.,* 69 Wash. 123, 124 Pac. 389, 41 L. R. A., N. S., 1064.)

The failure of the initial carrier to issue any receipt or bill of lading for an interstate shipment will not relieve it from liability under the statute, but it will be liable to the shipper to the same extent that it would have been liable to the lawful holder of the shipping receipt or bill of lading had it performed its statutory duty to issue such receipt or bill of lading. (*International Watch Co. v. Delaware L. & W. R. Co.,* 80 N. J. L. 553, 78 Atl. 49; *Galveston, H. & S. A. R. Co. v. Wallace,* 223 U. S. 481, 32 Sup. Ct. 205, 56 L. ed. 516, 517.)

"A company operating a mere switching railroad, transporting cars to and from trunk lines upon the basis of a division of profits, may be an interstate carrier." (*Aton Piano Co. v. Chicago, M. & St. P. R. Co.,* 152 Wis. 156, 139 N. W. 743.)

Notice to the terminal carrier is notice to the initial carrier under the law, for the reason that all of the carriers are agents of the initial carrier. (*Perkett v. Manistee etc. R. Co.,* 175 Mich. 253, 141 N. W. 607, 611.)

The presumption of law in all shipments of this kind is that the goods remain in good condition until the contrary is shown. (*Dunlap v. Great Northern R. Co.,* 34 S. D. 320, 148 N. W. 529; *Colbath v. Bangor & A. R. Co.,* 105 Me. 379, 134 Am. St. 569, 74 Atl. 918.)

MORGAN, J.—The record in this case discloses that on or about the first day of June, 1912, the respondents delivered to the Chicago, Burlington & Quincy Railroad Company at Connelsville, Missouri, a stock of drugs and certain drug-store fixtures to be shipped from that point to Spokane, Washington. The goods were routed by the above-named company over its line and over that of appellant. Before the car in which the goods were shipped reached the destination to which it had been consigned respondent, C. W. Barrett, called upon the general agent of appellant in Spokane and arranged to have it forwarded, upon its arrival, to Rupert, Idaho. Appel-

lant's general agent altered the original bill of lading by striking out the name "Spokane" as the destination of the car and in lieu thereof inserting "Rupert, Ida.," and by adding: "N. P. to Spokane, O. W. R. N. O. S. L.," and by indorsing thereon, "destination changed by C. R. Lonergan, G. A. N. P. Ry. 6/17/12. C. D. 3517." After some delay the car reached Rupert and upon being opened it was found that a part of the goods were missing and a large portion of the remainder were in a badly damaged condition. The goods were so located in the car as to indicate that they had been removed therefrom and reloaded, and their condition and position tended to show that the reloading had been carelessly and negligently done.

This action was commenced to recover for loss of and damage to the goods and by reason of delay in their delivery, and because of loss of time due to the condition in which they arrived at their destination. The case was tried to a jury, which returned a verdict in favor of respondents, upon which judgment was entered. Appellant moved for a new trial, which motion was denied, and this appeal is from the judgment and from the order denying the motion for a new trial.

The principal question presented is as to whether or not the facts in this case bring it within the scope of what is known as the Carmack Amendment to the Interstate Commerce Act of Congress, 34 Stats. at Large, 594, Comp. Stats. 1913, sec. 8592, Fed. Stats. Ann., Supp. 1909, p. 273, so as to bind appellant whether the loss and damage which occurred was due to its negligence or to the negligence of the other common carriers over whose lines it routed the goods from Spokane to Rupert. That amendment is as follows:

"That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no con-

tract, receipt, rule or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed; *Provided,* That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law. . . . . ''

Under this amendment a common carrier which receives goods for transportation from a point in one state to a point in another, if it routes the consignment over the line of another common carrier, makes the latter its agent and is liable to the owner of the goods, or his assigns, for any damage which results from negligence or carelessness in transportation, whether the damage occurs upon its own line or upon that of the carrier to which it delivers the consignment.

While it is true that in this case the goods were first delivered by respondents to the Chicago, Burlington & Quincy Railroad Company for transportation, and, under the terms of the contract then entered into, that company was the initial carrier and was liable for any damage which might result due to its negligence or to the negligence of the appellant company while the goods were en route from Connelsville to Spokane, it is also true that the contract in question was fully performed and complied with when the goods reached Spokane, and the Chicago, Burlington & Quincy Railroad Company was discharged from all obligations thereunder, unless it be shown, which it was not, that they were damaged en route between the above-named points, due to negligence in transportation, in which case the initial carrier would be liable under the Carmack Amendment.

The agreement between appellant and respondents, prior to the arrival of the goods in Spokane, whereby they were to be transmitted from that city to Rupert constituted a new contract entirely separate and independent of that entered into with the Chicago, Burlington & Quincy Railroad Company and one to which that company was not a party. An initial carrier is not liable for damage to goods occurring on lines not its own and over which they were routed without notice to it. The obligation of such a carrier ceases when the

goods reach the destination, in good condition, to which they were originally consigned. (*Parker-Bell Lumber Co. v. Great Northern R. Co.*, 69 Wash. 123, 124 Pac. 389, 41 L. R. A., N. S., 1064.)

While appellant did not issue a new bill of lading it altered the one issued by the Chicago, Burlington & Quincy Railroad Company and adopted it as its own obligation. Even had it not done this, but had accepted the consignment upon an oral agreement to deliver it, although the act of Congress under consideration expressly requires a common carrier to issue a receipt or bill of lading for goods accepted for transportation from one state into another, it is not necessary to the right of the shipper to recover for loss of or damage to the shipment that it do so. (*International Watch Co. v. Delaware L. & W. R. Co.*, 80 N. J. L. 553, 78 Atl. 49; *Thompson v. San Antonio & A. P. Ry. Co.*, 11 Tex. Civ. App. 145, 32 S. W. 427; *Aton Piano Co. v. Chicago, M. & St. P. R. Co.*, 152 Wis. 156, 139 N. W. 743.)

The evidence discloses that appellant transferred the goods to the Oregon-Washington Railroad & Navigation Company in the yards at or near Spokane. This fact does not relieve it from the liability imposed by law. The language of the act of Congress binds a common carrier which receives property for transportation from a point in one state to a point in another state for loss or damage which results from its own negligence or from that of any common carrier over which it routes the goods without regard to the distance it may transport them. The question is: Did appellant receive the goods for such a shipment? The evidence shows, conclusively, that it did. A common carrier which receives goods for interstate shipment is the initial carrier, although it only switches the car in which they are loaded to the lines of another common carrier to be transported out of the state. (*Aton Piano Co. v. Chicago, M. & St. P. R. Co., supra.*)

Appellant argues that there is no evidence showing that the consignment was delivered to it in good condition. It appears from the record that when the car arrived at Rupert it was sealed with Northern Pacific seals and, as heretofore indicated, the condition and position of the goods in the car

tended to show that the consignment had been reloaded.  Furthermore, a bill of lading was issued by the Oregon-Washington Railroad & Navigation Company showing a portion of the goods to be in bad order at the time they were received by it.  No evidence was offered on behalf of appellant as to the condition of the shipment when it left its possession and was delivered to the next connecting carrier for transportation.  The evidence conclusively shows that when the goods were originally loaded in Connelsville they were in good condition and were properly loaded, and the presumption is that they remained in that condition until the contrary was shown.  (3 Hutchinson on Carriers, sec. 1384 (sec. 761) ; *Laughlin v. Chicago & N. W. Ry. Co.,* 28 Wis. 204, 9 Am. Rep. 493 ; *Colbath v. Bangor & A. R. Co.,* 105 Me. 379, 134 Am. St. 569, 74 Atl. 918 ; *Dunlap v. Great Northern R. Co.,* 34 S. D. 320, 148 N. W. 529.)

The verdict in favor of respondents was for the sum of $960, with interest thereon at the rate of seven per cent per annum from July 25, 1912 ; judgment was entered in respondents' favor for $1,038.40 and costs.  The allowance of interest was erroneous.  The damage arose from the loss of a portion of the goods, the destruction of and injury to other portions and the loss of time occasioned by delay in transmission, and by reason of the condition in which the goods reached their destination.  The claim of respondents was for unliquidated damages, the amount of which was not susceptible of ascertainment by computation or by reference to market values, and they were not, therefore, entitled to interest prior to judgment.  (2 Sutherland on Damages, 3d ed., sec. 347 ; 13 Cyc. 83 ; *Swinnerton v. Argonaut Land & D. Co.,* 112 Cal. 375, 44 Pac. 719.)

The cause is remanded to the district court with instructions to modify the judgment by deducting therefrom the amount of interest allowed prior to the date of its entry, and, as so modified, it is affirmed.  No costs upon appeal will be allowed.

Sullivan, C. J., and Budge, J., concur.