## VICTOR PRODUCE COMPANY v. WESTERN TRANSIT COMPANY.[1]

December 15, 1916.

Nos. 19,977—(111).

**Carrier — initial shipper — action under Carmack amendment.**

1. Plaintiff shipped a carload of freight from Mankato to Duluth over the Omaha railway which delivered it to plaintiff at the latter place. Plaintiff then delivered it to defendant for transportation from Duluth to Hartford, Connecticut, and defendant issued a through bill of lading therefor. It was damaged after defendant had delivered it to a connecting carrier. The Omaha company did not undertake to cause the shipment to be carried beyond Duluth, and did not know that it was to be carried beyond that point. *Held* that defendant was the initial carrier within the purview of the Carmack amendment.

**Carrier — refusal of consignee to accept shipment immaterial.**

2. As the court adopted the correct rule for measuring the damages, whether the consignee at Hartford rejected the shipment without sufficient ground therefor is immaterial.

[1]Reported in 160 N. W. 248.

Note.—For authorities on the question of liability of connecting carrier for loss beyond its own line, see comprehensive note in 31 L.R.A.(N.S.) 1.

For a discussion of the question of Carmack amendment as affecting state regulations limiting liability of common carrier for the loss or damage to goods, see notes in 44 L.R.A.(N.S.) 257; 50 L.R.A.(N.S.) 819.

Action in the district court for St. Louis county to recover $550.34. The facts are stated in the opinion. The case was tried before Dancer, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $654.96. Defendant's motion for a new trial was denied on condition that plaintiff consent to a reduction of the verdict to $428.94, and the consent was given. From the order denying its motion for a new trial, defendant appealed. Affirmed.

*William Furst,* for appellant.

*Benjamin M. Goldberg* and *J. A. P. Neal,* for respondent.

TAYLOR, C.

Plaintiff delivered a carload of eggs to defendant for transportation from Duluth, Minnesota, to Hartford, Connecticut, and received from defendant a "through" bill of lading therefor. Defendant transported them by boat from Duluth to Buffalo, and connecting carriers transported them by rail from that point to their destination. Statements in the testimony indicate that they were damaged in a wreck before reaching Hartford. On account of their broken and damaged condition, the consignees refused to receive them from the railway company, and the railway company sold them and accounted to plaintiff for the proceeds of the sale less the expense of making it. Plaintiff brought suit against defendant, as the initial carrier, for the damages sustained on account of the breakage, and recovered a verdict. Defendant appealed from an order denying a new trial.

The action is based on the Federal statute, known as the Carmack Amendment, which makes the initial carrier responsible to the shipper for damage to the property while in transit, whether such damage occurred upon its own line or upon the line of some connecting carrier. Defendant insists that it was not the initial carrier, and hence is not liable under this statute for damages occurring while the property was in the hands of a connecting carrier.

Plaintiff had a place of business at Mankato as well as at Duluth, and shipped the eggs over the Omaha railway from its Mankato establishment to itself at Duluth. When the car arrived at Duluth, plaintiff paid the Omaha company for transporting it from Mankato, and then

caused it to be switched by the Northern Pacific Company from the Omaha yard to the Northern Pacific dock, where the eggs were loaded upon one of defendant's boats. Upon these facts defendant contends that the shipment was in interstate commerce when it left Mankato and that the Omaha Company was the initial carrier within the purview of the Carmack Amendment. This contention cannot be sustained, for the reason that there is no evidence that the Omaha Company undertook to cause the property to be carried beyond Duluth, or even knew that it was to be carried beyond that point.

Defendant also insists that the consignees were not justified in refusing to receive the eggs, but ought to have accepted them and held the carrier for the loss resulting from the breakage. Even if the consignees were not justified in refusing to accept the eggs, this fact is of no importance here, for the court measured the damages by the same rule by which they are measured when the consignee accepts the property and seeks to recover for injury to it. The court excluded all expense for handling and selling the eggs and limited plaintiff's recovery to "the difference between their value as actually delivered, and as they should have been delivered." Defendant has shown no prejudice resulting from the refusal of the consignees to accept them.

Order affirmed.