HOUSTON E. & W. T. RY. CO. v. HOUSTON PACKING CO.   (No. 7805.)

(Court of Civil Appeals of Texas. Galveston. Dec. 19, 1919. On Motion for Rehearing, April 1, 1920.)

Carriers ☞169, 177(3) — Carrier receiving car from switching company and issuing through bill of lading held "initial carrier" within Carmack Amendment.

Where shipper loaded one of its refrigerator cars on tracks of "I." Railway Company, which switched the car to "H." Railway Company, the latter paying "I." company for such switching services, and issuing a through bill of lading to the shipper, "H." company was the initial carrier, within the Carmack Amendment to the Interstate Commerce Act (U. S. Comp. St. §§ 8604a, 8604aa), and was liable for damages to the shipment in transit.

[Ed. Note.—For other definitions, see Words and Phrases, Initial Carrier.]

Appeal from District Court, Harris County; W. S. Hunt, Special Judge.

Action by Houston Packing Company against Houston East & West Texas Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood and McMeans, Garrison & Pollard, all of Houston, for appellant.

Hutcheson, Bryan & Dyess, of Houston, for appellee.

GRAVES, J. This action was brought against the Houston East & West Texas Railway Company as a result of the damage en route of a carload of meat, shipped in interstate commerce from Houston, Tex., to Springfield, Mass., under a through bill of lading issued by that railway company. The case was tried upon an agreed statement of facts, in which negligence, causing the amount of damage recovered for, of one of the defendant company's connecting carriers beyond Shreveport, La., was admitted, and judgment for that sum was entered against the defendant.

The railway company appeals, the only question presented in this court being, Which one of two railroads, the I. & G. N. R. R. Co. or the appellant, under the facts in evidence, was the initial carrier of the shipment within the meaning of the Carmack Amendment to the Interstate Commerce Act (U. S. Comp. St. §§ 8604a, 8604aa)? It being further conceded that both carriers generally were engaged in inter- and intra-state commerce, and

consequently subject to the rules and regulations of both the Interstate Commerce Commission and the Railway Commission of Texas.

We are relieved of setting out any of the agreed stipulations except those bearing upon the issue as to which one of them was the initial carrier. They are these:

"(6) That the plant of the Houston Packing Company is located in the city of Houston, Harris county, Texas, on the International & Great Northern Railroad tracks.

"(7) That on or about the 16th day of March, 1916, the Houston Packing Company loaded HP Car No. 233, being a refrigerator car, and owned by said Houston Packing Company, on the tracks of the International & Great Northern Railroad Company, with 20,878 pounds of meat trimmings.

"(8) That said car of meat was by the International & Great Northern Railroad Company delivered to the Houston East & West Texas Railway Company at 2:20 a. m., on March 17, 1916, with its bunkers seven-eighths full of ice; that said car while in the possession of the Houston East & West Texas Railway Company, on March 17, 1916, was re-iced by placing 1,800 pounds of ice in said car."

"(15) That said Houston Packing Company was an industry situated directly upon the track of the International & Great Northern Railway Company, and, in pursuance to the rules and regulations prescribed by the Texas Railroad Commission for the handling of freight in the city of Houston, said car was switched by the International & Great Northern Railway Company to the I. & G. N. yards in the city of Houston, a distance of about four miles from the plant of the Houston Packing Company; the H. E. & W. T. Railway Company received said car at said yards of the I. & G. N. Railway Company, and issued the through bill of lading to the Houston Packing Company, sued upon herein, which bill of lading is hereto attached and made a part of this agreement."

"(17) That the switching services which were performed by the International & Great Northern Railway Company were absorbed by the H. E. & W. T. Railway Company, and the H. E. & W. T. Railway Company made payment to the International & Great Northern Railway Company in the sum of $5 for switching said car as hereinbefore stated; that said $5 was paid to the International & Great Northern Railway Company out of the through rate charged for this shipment, and no extra charge was made to the shipper for said service. The I. & G. N. Railway Company issued no bill of lading to the Houston Packing Company, and the original bill of lading covering this shipment was issued by the H. E. & W. T. Railway Company, the only services performed by the I. & G. N. Railway Company being the switching services hereinbefore set out."

The bill of lading bore date March 16, 1916, and was therefore issued by the appellant on the same day the car was loaded by the I. & G. N. Railway Company and the day before it was delivered by the I. & G. N. Railway Company at its own yards to the appellant company. It will be further noted that the I. & G. N. did not receive this shipment under any contract of interstate carriage, the limit of its agreement and undertaking, pursuant to the rules and regulations of the Texas Railway Commission, being to switch all cars loaded on its line to the yards of the H. E. & W. T., and there deliver them to it. The only contract here appearing was the one made by the packing company with the appellant, and evidenced by the bill of lading, by which the latter agreed to transport the car through from Houston to its destination in Massachusetts.

We think these facts constituted the appellant company the "initial carrier," as that term is used in the Carmack Amendment, and that the courts have settled the question in favor of this view. They appear to us to have held that by "initial carrier" is meant the one who first contracts to transport the shipment from one state into another, and not the one who first merely receives or handles it in some incidental or subsidiary way, such as was done in the switching service here rendered by the I. & G. N. Indeed, apparently the most nearly applicable case cited by appellant as authority for a contrary doctrine (Barrett v. Northern Pacific Co., 29 Idaho, 139, 157 Pac. 1016) does not uphold it, for after quoting the Carmack Amendment, the court says:

"Under this amendment a common carrier *which received goods for transportation from a point in one state to a point in another,* if it routes the consignment over the line of another common carrier, makes the latter its agent, and is liable to the owner of the goods or his assigns, for any damage which results from negligence or carelessness in transportation, whether the damage occurs upon its own line or upon that of the carrier to which it delivers the consignment."

The italics are our own, inserted to indicate our conclusion that the court in that case did not intend to hold, as appellant here apparently contends, that the road first receiving the goods, regardless of contract, would be liable for all damages thereafter sustained by the shipment en route upon its interstate journey. See Parker-Bell Lumber Co. v. Great Northern Ry. Co., 69 Wash. 123, 124 Pac. 389, 41 L. R. A. (N. S.) 1064.

The underlying principle of the Carmack Amendment is one of agency, the connecting carriers being made the agents of the initial one for the purpose of taking the goods from the point of shipment to destination, pursuant to the terms of the initial carrier's contract. Just how the H. E. & W. T. Company here could have been such an agent of the I. & G. N. Company, when the latter had made no contract of any kind with the packing company, and, so far as appears from this record, was not even shown to know the destination of the shipment, does not occur.

Rather was the I. & G. N. the agent of appellant, performing for it merely a switching service as a part of the latter's prior contract with the shipper to carry the goods all the way through from Houston to Massachusetts, which contract rendered appellant liable as the initial carrier. Federal Statutes Annotated, 1909 Supplement, p. 274; Victor Produce Co. v. Western Transit Co., 135 Minn. 121, 160 N. W. 249; Ry. Co. v. Townsend, 160 S. W. 760; Ry. Co. v. Commercial Guano Co., 103 Ga. 590, 30 S. E. 555; Noyes v. Ry. Co., 27 Vt. 110.

Believing that no error was committed below, the judgment is affirmed.

Affirmed.

### On Motion for Rehearing.

In the original opinion, after quoting from the decision in Barrett v. Northern Pacific Co., 29 Idaho, 139, 157 Pac. 1016, this court said:

"The italics are our own, inserted to indicate our conclusion that the court in that case did not intend to hold, as appellant here apparently contends, that the road first receiving the goods, regardless of contract, would be liable for all damages thereafter sustained by the shipment en route upon its interstate journey. See Parker-Bell Lumber Co. v. Great Northern Ry. Co., 69 Wash. 123, 124 Pac. 389, 41 L. R. A. (N. S.), 1064."

In criticizing that declaration, appellant now makes it quite plain, not only that the use of the word "apparently" in the attempt to state its contention with reference to the holding in the case there referred to did not do full justice to its actual position concerning the effect of that particular decision, but that its most earnest insistence is that both the Barrett Case, and a number of others it cites and relies upon, among them Ross v. Ry. Co., 112 Me. 63, 90 Atl. 711, and Aton Piano Co. v. Ry. Co., 152 Wis. 156, 139 N. W. 743, sustain its proposition that the I. & G. N. and not the H. E. & W. T. was the initial carrier in this instance.

While gladly so correcting the record as to make it accurately reflect appellant's precise attitude, and therefore striking from the former opinion the word "apparently," a careful reconsideration of the matter convinces us that its thus clarified and emphasized contention is erroneous, and that our first determination was correct.

The principle running through all the leading cases thus cited as authority for a contrary view, as we deduce it, is the same and fully supports this court's conclusion. In the Barrett Case the court finds under the facts that two separate and distinct contracts of interstate carriage were entered into, the first one with the Chicago, Burlington & Quincy Railroad Company for transportation from Connelsville, Mo., to Spokane, Wash.; the second with the Northern Pacific Railway Company for carriage on from Spokane, Wash., to Rupert, Idaho. The latter company alone was sued, and the only material question involved was whether damage shown to have been done to the shipment between Spokane and Rupert—not en route from Connelsville to Spokane, between which points no damage was shown to have occurred—was chargeable, under the Carmack Amendment, to the Northern Pacific Company, whether or not resulting from its own negligence or that of the other common carriers over whose lines it had routed the goods from Spokane to Rupert. In holding the Northern Pacific to be so bound, the Supreme Court of Idaho, after using the language quoted in our former opinion, rests its conclusion directly upon the ground that it was so liable because it had been the first carrier to contract to take the goods from one of those points to the other, and for that reason alone had become, as to that journey, the initial carrier within the meaning of the Carmack law. The court emphasizes this view in rejecting the contention that the Chicago, Burlington & Quincy could have been the initial carrier over the route involved—that only from Spokane on to Rupert—by observing that that road would have been the initial carrier as to any damage occurring between Connelsville and Spokane for the very same reason; that is, because it had been the first carrier to contract to transport the shipment from one of those particular interstate points to the other. There can be no comfort for appellant, therefore, in that case.

The facts and the reasoning in the Ross Case are even more adverse. There three carloads of potatoes were shipped from different points out on an electric road, the Bangor Railway & Electric Company, through Bangor, Me., to Hoboken, N. J.; but there was a through tariff rate from these points of origin themselves to Hoboken, and the Maine Central Railroad Company, which received the cars at Bangor, and then by its own and connecting lines caused them to be transported on to Hoboken, advanced to the electric company its proportionate part of such through freight charges. This, despite the fact that the electric company had only billed the cars as far as Bangor, without knowledge on the part of its responsible shipping agents—so far as shown by the evidence—that their destination was beyond that point, the court found to constitute evidence of such a "common control, management, or arrangement for a continuous carriage or shipment," as to bring the electric company within the purview of the Carmack Amendment; in other words, to make it the initial carrier within the contemplation of that act, because it had done what in legal effect was held to amount to a contract to become such. Nor was that court either,

the Supreme Judicial Court of Maine, content to merely so hold without stressing that as its interpretation of the law under consideration; for in further determining which of the carriers involved · was liable to the shipper on a special contract made with him by the Maine Central at Bangor for heating the cars while en route to destination, in rejecting the suggestion that the electric company was the initial obligor as to that undertaking also, and holding the railroad company alone responsible, said:

"The defendant was the first carrier to contract with the shipper with respect to heating; and we think that, as to defaults in heating during the course of transportation, it it to be deemed the initial carrier. We may properly add that the point seems to be a novel one in cases involving a construction of the Carmack Amendment. Our attention has been called to no case, and we have found none, like this one. We base our conclusion upon what seems to us to be a reasonable construction of the statute."

Surely, then, this case cannot correctly be said to support appellant's position.

Likewise with the two just reviewed, in the Aton Piano Company Case, the appealing railway company, in the effort to escape liability as the initial carrier, contended that it acted merely in the capacity of a local express or drayman in delivering the pianos at Milwaukee to its connecting carrier for transportation into another state; but the court, after observing that doubtless a contract of that nature might have been made, stated that the undisputed evidence showed it had not been, and held the appellant subject to the provisions of the Carmack Amendment, although it had only in fact carried the goods 15 miles, for the reason that it had first contracted to make the shipment an interstate one for the entire distance.

It is not deemed essential that further cases be discussed; as before stated, so far as we have had opportunity to determine, their reasoning not only does not inveigh against, but supports, our own conclusion. Moreover, the particular facts here involved, it seems to us, very clearly class the simple service rendered in this instance by the I. & G. N. Company without the pale of the Carmack Amendment. From the agreed stipulation it affirmatively appeared that this car was merely switched by the I. & G. N. from its side track, where the loading took place, to a point in its yards four miles distant, all within the city of Houston, and done strictly pursuant to the local requirements of the Texas Railroad Commission, and even that one day after the appellant company—without any showing that the I. & G. N. Company had any knowledge of that undertaking or of the destination of the shipment—had entered with the shipper into a written contract to transport the car all the way from Houston to a destination in Massachusetts, in consideration of a through rate between those points.

To hold a road subject, under these conditions, to all the pains and · penalties of this amended federal statute would, it seems to us, in practical effect at least, be to say that under no circumstances, ·without becoming so bound, could it render any local or incidental service touching in any manner a shipment other carriers, with whom as to their undertaking it was in no wise in privity, intended for interstate transportation—a doctrine this court is unwilling to underwrite.

The motion is overruled.

Overruled.