# CHARLESTON.

## WESTERN MARYLAND RAILWAY COMPANY *v.* JAMES E. CROSS.

Submitted May 29, 1924.     Decided June 16, 1924.

1. CARRIERS—*Where No Bill of Lading Issued for Interstate Shipment Uniform Bill Prescribed by Interstate Commerce Commission, Implied.*

   Where a railroad accepts freight for interstate transportation, but issues no bill of lading to the shipper, the uniform bill of lading prescribed by the Interstate Commerce Commission will be implied as the contract of shipper and carrier.  (p. 670).

2. SAME—*Shipper Directing Shipment "Freight Collect" Cannot Escape Freight Charge Liability, Unless by Written Stipulation That Charges Must be Paid Before Delivery.*

   The shipper, though he directs that the shipment be carried "freight collect", can not escape liability for the freight and other lawful charges, unless he stipulates by signature in the space provided on the bill of lading that the carrier shall not make delivery without requiring payment of such charges.  (p. 671).

3. SAME—*Consignor Cannot Escape Liability for Transportation Charges Unless Stipulating Therefor as Provided in Uniform Bill of Lading.*

   The fact that in a particular case no bill of lading is issued, and that Federal Statute, Barnes' Federal Code, 1922 Sup., sec. 7886, forbids a carrier from relinquishing the possession

of freight at destination without payment of transportation charges, does not save the consignor from his liability, unless he stipulates therefor in the manner provided in the uniform bill of lading.  (p. 673).

MILLER, JUDGE, absent.

Error to Circuit Court, Mineral County.

Action by the Western Maryland Railway Company against James E. Cross, trading under the name and style of Cross Bros. Coal Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Arthur Arnold* and *W. C. Grimes,* for plaintiff in error.
*Chas. N. Finnell* and *Wm. H. Maynard,* for defendant in error.

MEREDITH, PRESIDENT:

The Western Maryland Railway Company recovered a judgment for $177.12, principal and interest of a freight charge on a car of coal shipped by defendant as consignor from Angle Siding in Mineral County to Greenwich Coal Piers, near Philadelphia, Pennsylvania. Defendant seeks to reverse that judgment.

This is the second time the case has been before us for review. At the first hearing in this court we reversed a judgment for the plaintiff, and remanded the cause because the case had been tried and judgment rendered in the circuit court without an issue. We announced our decision October 17, 1922. *Railway Company* v. *Cross,* 92 W. Va. 9, 114 S. E. 438.

By order entered March 27, 1923, in the circuit court of Mineral County defendant was permitted to file his plea of non-assumpsit and three special pleas, and at the same time he gave notice to plaintiff of his claim of recoupment in the action. By agreement a jury was waived and the court substituted in lieu thereof, and it was further stipulated that an agreed statement of facts submitted to the court at the former hearing, as well as certain testimony taken, should be considered at the retrial. Defendant, over plaintiff's objection,

was given leave to take additional testimony not contradictory to the said agreed statement.

On June 14, 1923, the circuit court entered its final order. It rejected all of defendant's special pleas; refused to consider his notice of recoupment; rejected the additional testimony authorized to be taken by the prior order; and upon the same agreed statement of facts and oral testimony considered at the former trial entered the judgment complained of.

The agreed facts are that defendant, trading under the name and style of ''Cross Bros. Coal Company'', as consignor, at the direction and order of the Cross Fuel Company shipped one of plaintiff's cars loaded with coal to Philadelphia Export Company, as consignee at Greenwich Piers. Defendant directed that the car be shipped ''freight collect''. It was shipped September 21, 1920, and was received by the consignee at the delivery point, but the freight charges and war tax thereon were unpaid. There is no controversy over the amount of the charges, and the real question as we stated it in our previous opinion ''is whether the consignor can be compelled to pay the freight charge on a shipment made collect, when the carrier has delivered the freight to the consignee without collecting the freight charge from it.''

Defendant developed his proposition that plaintiff can not recover the freight charges from him after failure to collect from the consignee by his three special pleas aforesaid.

Special Plea No. 1 states that having delivered the car to the consignee without collecting the freight charges from the consignee, plaintiff violated its agreement with defendant and the instructions given by him, and therefore can not recover.

Special Plea No. 2 says that having delivered the car of coal to the consignee without first securing payment of the freight charges, plaintiff violated the rules of the Interstate Commerce Commission, and the provisions of 41 St. L. 479, forbidding discrimination as between shippers; that it is therefore guilty of an illegal act, as well as of a breach of its contract with defendant, greatly to the damage of defendant, and therefore can not recover.

Special Plea No. 3 alleges the same illegal act on the part

of the plaintiff, and asserts that by reason thereof plaintiff is estopped from maintaining its action; and that by reason of plaintiff's acts defendant has sustained damages to the amount of plaintiff's demand.

The notice of recoupment sets forth similar matters to those contained in special pleas Nos. 2 and 3, and concludes that defendant has been damaged to the amount of plaintiff's claim.

We have stated the real question at issue; it may be further narrowed by stating that we must determine defendant's liability or non-liability in the light of the Federal Interstate Commerce Act, as amended by Act of Congress of February 28, 1920, ch. 91, sec. 405; Barnes' Federal Code, 1922 Sup., sec. 7886; that being the statute in effect when the shipment in this case was made. Sec. 7886 reads in part as follows:

> "It shall be unlawful for any common carrier subject to the provisions of this Act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, or locality, or any particular description of traffic, in any respect whatsoever, or to subject any perticular person, company, firm, corporation, or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever.
> "From and after July 1, 1920, no carrier by railroad subject to the provisions of this Act shall deliver or relinquish possession at destination of any freight transported by it until all tariff rates and charges thereon have been paid, except under such rules and regulations as the Commission may from time to time prescribe to assure prompt payment of all such rates and charges and to prevent unjust discrimination; Provided, That the provisions of this paragraph shall not be construed to prohibit any carrier from extending credit in connection with rates and charges on freight transported for the United States, for any department, bureau, or agency thereof, or for any State or Territory or political subdivision thereof, or for the District of Columbia."

Defendant notes particularly the language quoted which forbids the carrier from delivering or relinquishing possession of freight at destination until all charges have been paid, and upon that provision founds his argument that plain-

tiff has performed an illegal act which bars it from recovery.

Plaintiff, on the other hand, relying upon our case of *Coal & Coke R. R. Co.* v. *Buckhannon River Coal & Coke Co.*, 77 W. Va. 309, 87 S. E. 376, and other authorities, asserts the primary liability of a consignor for freight, irrespective of any directions he may give as to collecting the freight from the consignee; and further argues that no act, agreement or omission could, under the Interstate Commerce Act, bar the carrier of its right to recover the freight charges owing to it. It can not be estopped, says plaintiff in effect, into discriminating in favor of any consignor.

In determining the rights of these parties it is necessary to ascertain exactly the nature of their contract. In the ordinary case we would look primarily to the bill of lading issued to cover the shipment, but here there seems to have been none, and counsel in the briefs treat the case as if there were none. However, plaintiff argues that in the absence of a bill of lading, "the rights and liabilities of the parties are regulated by the uniform bill of lading so far as applicable"; citing, *Standard Combed Thread Co.* v. *Pennsylvania R. R. Co.*, 88 N. J. L. 257, 95 Atl. 1002, and on this paint we think it is correct. We so held in *Hubbard Grocery Co.* v. *Payne, etc.*, 94 W. Va. 273, 118 S. E. 152, where we said:

> "(1) Where the carrier has failed to issue to the shipper a bill of lading the contract set out in the standard bill of lading prescribed by the Interstate Commerce Commission will be implied as the agreement between the parties. The law was intended to operate in all cases where a carrier receives goods under an agreement, oral or written, for their transportation to another state. *Adams Express Co.* v. *Croninger*, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. ed. 314, 44 L. R. A. (N. S.) 257; *W. H. Aton Piano Co.* v. *Chicago etc. R. Co.*, 152 Wis. 156, 139 N. W. 743.
>
> (2) The parties can not waive the terms of the bill of lading contract nor can the carrier by its conduct give the shipper the right to ignore these terms and hold the carrier to a different responsibility from that fixed thereby. *Chicago & Alt. R. R.* v. *Kirby*, 225 U. S. 155, 166; *Kansas City Sou. Ry. Co.* v. *Carl*, 227 U. S. 639; *A. T. & S. F. Ry Co.* v. *Robinson*, 233 U. S. 173, 181; *Tex. & Pac. Ry.* v. *Leatherwood*, 250 U. S. 478;

*Ga. Fla. & Ala. Ry. Co.* v. *Blish Milling Co.*, 241 U. S. 190, 197; *Bronstein* v. *Payne, Director General of Railroads,* (Md.) 113 Atl. 648; *Wm. F. Mosser Co.* v. *Payne, Dir. Gen.*, 92 W. Va. 41, 114 S. E. 365.

As stated by Justice Hughes in the case of *Ga. Fla. & Ala. Ry. Co.* v. *Blish Co., supra,* 'A different view would antagonize the plain policy of the act and open the door to the very abuse at which the act was aimed.' "

The uniform bill of lading in use in September, 1920, was prescribed by the Interstate Commerce Commission in an opinion decided April 14, 1919. See 52 I. C. C. Rep. 671. Section 7 is as follows:

"(1)  The owner or consignee shall pay the freight and average, if any, and all other lawful charges accruing on said property, and, if required, shall pay the same before delivery.

"(2)  The consignor shall be liable for the freight and all other lawful charges, except that if the consignor stipulates, by signature, in the space provided for that purpose on the face of this bill of lading that the carrier shall not make delivery without requiring payment of such charges and the carrier, contrary to such stipulation, shall make delivery without requiring such payment, the consignor shall not be liable for such charges.

"(3)  Nothing herein shall limit the right of the carrier to require at time of shipment the prepayment or guarantee of the charges.

"(4)  If upon inspection it is ascertained that the articles shipped are not those described in this bill of lading, the freight charges must be paid upon the articles actually shipped."

By this provision it is very clear that the consignor is always liable for the freight and all other lawful charges, except where he stipulates by signature in the place and manner prescribed by the provision. Here as no bill of lading was issued defendant stipulated nothing in the manner provided above. Of course, it may be thought that as no bill was issued defendant had no opportunity to save himself, but we must remember, as Judge LITZ suggested in *Grocery Co.* v. *Payne, supra,* that the uniform bill of lading is prescribed under direct authority of Congress, and it is intended to operate and does operate in all cases where a carrier re-

ceives goods for transportation into other states. Both parties were bound to respect the provisions of the bill of lading so prescribed even though none was issued covering the particular shipment involved here. Defendant did not protect himself in the manner provided and can not escape responsibility.

But conceding defendant's liability to pay the charges under the bill of lading, we are met by his argument that the carrier has violated the act quoted above prohibiting the carrier from relinquishing the shipment prior to the collection of the freight charges. Defendant says this was unlawful and precludes recovery. While we find no case decisive of this question, as the statute now stands, we find several decisions on the act prior to amendment, which seem to us to control the principles involved.

The object of the statute, as is conceded by both parties, is to prevent carriers from dealing preferentially with particular shippers. All Shippers of goods are to be accorded the same rates, subject to no rebates or unfair discriminations and the act prior to the amendment of February 28, 1920, merely forbade in somewhat general language those objectionable practices. The amendment, so far as this case is concerned, was, as we have shown, to prohibit the reliquishment of goods prior to payment of freight.

The cases which construe the act prior to amendment seem to uniformly hold that the carrier can not be estopped from enforcing its claim for payment. This we find well stated and supported in the recent case of *Louisville & Nashville Ry. Co.* v. *Central Iron & Coal Co.*, 44 Sup. Ct. Rep. 441, where Mr. Justice Brandeis said:

> "No contract of the carrier could reduce the amount legally payable, or release from liability a shipper who had assumed an obligation to pay the charges. Nor could any act or omission of the carrier (except the running of the statute of limitations) estop or preclude it from enforcing payment of the full amount by a person liable therefor. *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Fink*, 250 U. S. 577, 49 Sup. Ct. Rep. 27, 63 L. Ed. 1151; *New York Cent. etc. R. R. Co.* v. *York & Whitney Co.*, 256 U. S. 406, 41 Sup. Ct. Rep. 509, 65 L. Ed. 1016. Compare *St. Louis Southwestern*

*Ry. Co.* v. *Spring River Stone Co.,* 236 U. S. 718, 35 Sup. Ct. 456, 59 L. Ed. 805.''

We do not believe that the amendment changed either the spirit of the statute or the consignor's liability. It imposes a penalty upon the carrier for the violation of its terms, (See Barnes' Fed. Code, 1922 Sup. §7895), but we do not think it would defeat its own purposes by making it possible for the carrier by the commission of an unlawful act to estop itself from collecting lawful charges from a consignor, thus rebating charges properly accrued. The carriers subject to this act are public utilities, the public is interested in seeing that they are paid for services performed, and we are not of opinion that they can by unlawful methods effect a discrimination between shippers . Defendant did not pursue the method prescribed by the Interstate Commerce Commission to relieve him of his liability for the charges and he can not complain.

As defendant's special pleas and notice of recoupment are built around the theory of defense which we have just shown to be false, the circuit court was obviously correct in refusing to consider them.

The additional testimony which defendant offered did no more than support the agreed statement that the car in question was shipped ''collect,'' with the additional showing that collect shipments were customary. This custom, as we have shown, could not affect defendant's obligation as consignor, when he did not secure himself in the manner prescribed by the Interstate Commerce Commission. The evidence could not have affected the case and was properly rejected.

The judgment for the plaintiff was clearly right and it will be affirmed.

*Affirmed.*