## ST. LOUIS SOUTHWESTERN RAILWAY COMPANY v. SPRING RIVER STONE COMPANY.

ERROR TO THE SPRINGFIELD COURT OF APPEALS OF THE STATE OF MISSOURI.

No. 158. Submitted January 27, 1915.—Decided March 22, 1915.

Where the shipper has paid full freight charges computed on full weight of shipment equalling minimum capacity of cars applied for and permitted for the class of traffic by the filed tariff, he cannot afterwards be compelled to pay an excess on recomputation of charges based on minimum capacity of larger cars supplied by the carrier on account of shortage of the size applied for, all parties having acted in good faith.

Without modifying the rule announced in former decisions in respect to the obligation on both carrier and shipper to strictly observe the lawful tariff, *held* under the special circumstances of this case, failure to show that the carrier did not comply with the rules in regard to noting the fact that the smaller cars were supplied for its own convenience, does not require the shipper to pay charges on the marked capacity of the cars actually used.

169 Mo. App. 109, affirmed.

THE facts are stated in the opinion.

*Mr. S. H. West, Mr. E. A. Haid, Mr. Roy F. Britton, Mr. C. C. Collins* and *Mr. H. C. Barker* for plaintiff in error:

Common carriers by railroad engaged in interstate commerce are required by the acts of Congress regulating commerce to collect the rates published in the schedules or tariffs on file with the Interstate Commerce Commission. *G., C. & S. F. Ry.* v. *Hefley,* 158 U. S. 98; *Tex. & Pac. Ry.* v. *Mugg,* 202 U. S. 242; *Armour Packing Co.* v. *United States,* 209 U. S. 56; *Tex. & Pac. Ry.* v. *Abilene Cotton Co.,* 204 U. S. 426; *Tex. & Pac. Ry.* v. *Cisco Oil Co.,* 204

U. S. 449; *Albers Commission Co.* v. *Kan. City So. Ry.,* 223 U. S. 573; *Robinson* v. *Balt. & Ohio R. R.,* 222 U. S. 506; *Ill. Cent. R. R.* v. *Henderson Elevator Co.,* 226 U. S. 441; *Poor Grain Co.* v. *C., B. & Q. R. R.,* 12 I. C. C. 418; *Blinn* v. *Sou. Pac. Co.,* 18 I. C. C. 430; *Gerber* v. *Wabash Ry.,* 63 Mo. App. 145; *Sutton* v. *St. L. & S. F. R. R.,* 159 Mo. App., 685; *Dunne* v. *St. L. S. W. Ry.,* 166 Mo. App. 372.

Shippers are presumed to know the provisions of tariffs duly published and filed with the Interstate Commerce Commission, and rates named in such tariffs are not the subject of contract between carriers and shippers. *Chi. & Alt. Ry.* v. *Kirby,* 225 U. S. 155; *Adams Exp. Co.* v. *Croninger,* 226 U. S. 491; *M., K. & T. Ry.* v. *Harriman,* 227 U. S. 656; *Bost. & Maine Ry.* v. *Hooker,* 233 U. S. 97; *Balt. & Ohio R. R.* v. *New Albany Co.,* 94 N. E. Rep. 906; *Mires* v. *Railroad,* 134 Mo. App. 379; *Drey* v. *Mo. Pac. Ry.,* 156 Mo. App. 178; *United States* v. *Miller,* 223 U. S. 599.

The shipping ticket prepared by respondent's employé and signed by appellant's agent is a "bill-of-lading." A bill of lading is the carrier's receipt for goods delivered to it for transportation. It may also contain the contract of carriage, but this is not necessary to make the instrument a bill of lading. Porter on Bills-of-Lading; Standard Dictionary; Webster's New Int. Dict.; Century Dict.; *Cope* v. *Cordova,* 2 Rawle (Pa.), 202; *The Mayflower,* 16 Fed. Cas. 1250; Hutchinson on Carriers.

The provision of the tariffs requiring that the shipper's order for cars of certain capacity be noted on the bill of lading to authorize the use of the marked capacity of the cars so ordered as the minimum weight on the shipments, is a "regulation affecting the charges" within the meaning of § 6 of the Act to Regulate Commerce; such regulations are a part of the contract of shipment which automatically determine the rates to be charged and must be complied with by both shipper and carrier. *Bost. & Maine Ry.* v.

*Hooker*, 233 U. S. 97; *C., R. I. & P.* v. *Cramer*, 232 U. S. 490; *M., K. & T. Ry.* v. *Harriman*, 227 U. S. 656.

*Mr. Thomas Hackney* for defendant in error.

MR. JUSTICE MCREYNOLDS delivered the opinion of the court.

A controversy between the Railway Company and defendant shipper concerning freight charges was adjusted by computing them upon the actual weight of the merchandise transported. Afterwards, claiming that the reckoning should have been upon the minimum capacity of cars used, the Railway Company sued for the difference between the two results. Defendant relied upon the settlement and also full payment; the trial court directed a verdict for it; this was approved upon appeal (169 Mo. App. 109); and the cause is here by writ of error.

Plaintiff in error operates a road extending northward from Fort Worth, Texas, which connects through an intermediate one with the St. Louis and San Francisco Railroad whose line reaches Carthage, Missouri, where defendant is engaged in quarrying, selling and shipping stone. Having been advised by plaintiff in error's commercial agent that the rate on stone in cars of 50,000 pounds capacity to Fort Worth was 27½ cents per hundred, defendant contracted to deliver five carloads to a purchaser located there. The local agent of the initial carrier at Carthage was informed that such cars would be required for the proposed shipments, and in November and December, 1908, he was requested by telephone to supply them. Cars of that size were scarce and for its own convenience the Railroad Company furnished five larger ones— 60,000 to 88,000 pounds—in which the shipments were made, the weight in each instance being less than the marked minimum but appropriate for a 50,000 pound car.

When these arrived at Fort Worth charges of 27½ cents per hundred, marked capacity, were demanded. They were paid and immediately thereafter the shipper presented a claim for the amount exacted above a reckoning based on actual weights. Careful investigation was promptly made and in February, 1909, the excess was refunded. All parties acted with knowledge of the facts,. in good faith and without purpose to evade the law.

Upon the theory that it was bound to collect freight charges according to car capacity and that the settlement was prohibited by regulations of the Interstate Commerce Commission, two years thereafter plaintiff in error commenced this action to recover what it had repaid.

At the trial the way-bills were not introduced, their absence was not accounted for, and their contents do not appear. No carrier's order book was produced. The shipper received no bill of lading, but the Railway Company offered to introduce alleged copies of five signed by the Carthage agent. They were rejected because not properly identified, and no further effort was made to prove their contents. Five so-called shipping tickets were put in evidence. These requested the initial carrier to accept the freight, and upon them appears the following signed by its agent: "This shipment is tendered and received subject to the terms and conditions of the Company's Uniform Bill of Lading. All conditions herein to the contrary are cancelled."

The applicable duly filed tariff schedule specified freight rate on stone between Carthage and Fort Worth as 27½ cents per hundred when loaded in 50,000 pound cars. It also provided that "minimum weight will be the marked capacity of car on stone;" and Item No. 81 was in these words: "The following rule will be observed in assessing the freight charges for the minimum weights, according to capacity of car: 'When the carrier cannot furnish car of capacity ordered by shipper, and for his own convenience

provides a car of greater capacity than the one ordered by the shipper, it may be used on the basis of the minimum carload weight fixed in tariff applied on size of car ordered by shipper, but in no case less than the actual weight. Capacity of car ordered, number of the order, and date of same to be shown in each instance on the bill of lading and the carrier's way-bill.' In no case must shipment be billed at minimum weight of a car of less capacity than in service on initial line."

The so-called shipping tickets may not be treated as bills of lading within the requirement; upon their face they refer to "the Company's Uniform Bill of Lading," and plaintiff in error undertook to introduce alleged copies of bills of that character. The facts concerning the way-bills are undisclosed. It is not possible, therefore, to ascertain from the record the contents of any of the bills.

In effect the Railway Company now contends that, as the evidence fails affirmatively to show the notations required by Rule 81, the law imposes an absolute obligation upon the shipper to pay charges estimated upon the marked capacity of cars utilized notwithstanding the settlement and good faith of all parties. To this position we cannot give assent. In the circumstances the initial carrier was charged with the duty of making these notations; and for the purposes of this suit the shipper might assume compliance with that duty—he was not required to establish actual performance. He only sought and received what was authorized by the tariff on file. Larger cars than he requested were supplied for the carrier's special accommodation, and the commands of the applicable rule addressed to the latter imposed the clerical task of recording information within its peculiar knowledge upon documents for whose preparation it was responsible.

Nothing herein is intended to modify conclusions announced in former opinions in respect of the obligation

upon both carrier and shipper strictly to observe lawful tariffs. We determine only the narrow point adequate for disposition of this cause upon the particular facts revealed by an unsatisfactory record.

The judgment of the court below is

*Affirmed.*