## ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. SHIELDS GRAIN & COAL CO. et al. (No. 2230.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 12, 1920.)

1. Commerce ⬅➡33—Shipment between points in state through another state subject to interstate commerce law.

Maize shipped from one point in Texas through Oklahoma to another point in Texas was subject to the provisions of the federal Interstate Commerce Law (U. S. Comp. St. § 8563 et seq.).

2. Commerce ⬅➡10—Time to sue for freight on interstate commerce governed by state statutes.

In absence of rules of Interstate Commerce Commission or federal statute providing when suit must be commenced by railroad to recover unpaid freight on interstate shipment, the statutes of limitations of the state govern.

3. Limitation of actions ⬅➡24(2)—Bill of lading a "contract in writing."

A bill of lading is a "contract in writing" within the meaning of Vernon's Sayles' Ann. Civ. St. 1914, art. 5688, the four-year statute of limitations, and an action by a carrier to recover unpaid freight is not barred until expiration of four years; for failure on the part of a carrier to collect or a shipper to pay the stipulated rate is a breach of a contractual obligation, and not merely of a legal duty, although the rate stipulated is the only lawful rate.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Written Contract or Agreement.]

Appeal from Cherokee County Court; O. F. Gibson, Judge.

Suit by the St. Louis Southwestern Railway Company of Texas against the Shields Grain & Coal Company and the Jacksonville Grain & Commission Company. From a judgment for defendants, plaintiff appeals. Reversed, and judgment rendered against the last-named defendant.

January 18, 1915, the Shields Grain & Coal Company, having sold a carload of maize to the Jacksonville Grain & Commission Company, f. o. b. the cars at Wellington, Tex., shipped same from that place, through Oklahoma, to Jacksonville, Tex. It appeared from the bill of lading covering the shipment that the carrier was to notify the grain and commission company when the maize reached Jacksonville, but same was to remain subject to the order of the grain and coal company. The sum due the carrier for transporting the maize according to the rate fixed by law was $238.70. The grain and commission company, having paid a draft drawn on it by the grain and coal company for the purchase price of the maize, presented the bill of lading to appellant, and demanded a delivery of the maize to it. Appellant complied with the demand, collecting from the grain and commission company $127.10 as the freight due on the shipment, instead of $238.-70, the sum legally due. This was a suit by appellant against both the grain and coal company and the grain and commission company to recover of them $111.60, the difference between the sum the grain and commission company paid as freight on the shipment and the sum it should have paid. The trial court found that the suit was not commenced until April 13, 1917, which was more than two years after the right in appellant to sue for said $111.60 accrued, and, concluding that appellant's right of action was therefore barred, rendered judgment that it take nothing by its suit.

Marsh & McIlwaine, of Tyler, for appellant.

M. L. Lefler, of Rusk, for appellees.

WILLSON, C. J. (after stating the facts as above). [1] Notwithstanding the maize was shipped from one to another point in Texas, the shipment was subject to the provisions of the federal interstate commerce laws, because by the terms of the bill of lading covering its carriage it was to and did pass through another state, to wit, Oklahoma. Railway Co. v. Asher, 171 S. W. 1114.

[2, 3] The parties agreed that according to the rate fixed by said laws the amount paid to appellant as freight on the shipment was $111.60 less than it should have been. As appellant was bound to collect and the consignee was bound to pay freight according to the rate so fixed (Railway Co. v. Fink, 250 U. S. 577, 40 Sup. Ct. 27, 63 L. Ed. 1151), the former was entitled to recover the $111.60 it sued for, unless it was true, as the trial court concluded it was, "that," quoting, "according to the rules of the Interstate Commerce Commission and the federal act to regulate commerce," the suit must have been commenced within two years from the time

---

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

when appellant's cause of action accrued. We have not been referred to and have not found a rule of said commission or a federal statute which required a suit to be commenced within the time specified by the trial court. In the absence of such a rule or statute, the question as to whether appellant's cause of action was barred or not should have been by the trial court, and must be by us, determined with reference to the statute of limitations of this state. Bauserman v. Blunt, 147 U. S. 647, 13 Sup. Ct. 466, 37 L. Ed. 316. By the terms of that statute an action for debt, as appellant's was, "where the indebtedness is not evidenced by a contract in writing," must be commenced "within two years after the cause of action shall have accrued" (Vernon's Stat. art. 5687), and such an action, "where the indebtedness is evidenced by or founded upon any contract in writing," must be commenced "within four years after the cause of action shall have accrued." Vernon's Stat. art. 5688. As appellant's suit was not commenced within two years from the time when it might have been, but was commenced within four years from that time, it follows that the action was barred, unless it was for indebtedness "evidenced by or founded upon" a contract in writing. That a bill of lading executed by a carrier and the consignor, as the one in question here was, is a "contract in writing" within the meaning of the four-year statute of limitations of this state has been definitely settled. Elder v. Dempster & Co. Ry. Co., 105 Tex. 628, 154 S. W. 975. It would seem, therefore, that the four-year statute referred to above was applicable, unless it was true, as the trial court further concluded it was—

'that the stipulations in the bill of lading touching the rate cannot be the subject of contract relations between shipper and carrier, and therefore a failure on the part of the carrier to collect or the shipper to pay the stipulated rate is a breach of legal duty, and not of contractual obligation."

The contrary of the trial court's conclusion seems to have been reached by the United States Circuit Court of Appeals in New v. Denison Clay Co. (C. C. A.) 260 Fed. 70, reported after the instant case was tried in the court below. In that case the bills of lading, like the one in this case, did not state either the rate or the amount of the freight, but contained an agreement to pay same. The federal court construed the agreement to be one to pay the lawful freight, saying:

"These bills of lading contained valid written contracts of the defendant to pay the lawful freight for the transportation involved in this action"

—and held that the suit was not one on a contract not in writing or on a liability created by statute within the meaning of the Kansas statute of limitations, but was one on an "agreement, contract or promise in writing" within the meaning of that statute. It is plain, we think, that if the ruling in that case should be applied in this one the judgment here complained of is wrong. As we think that ruling should be applied here, the judgment will be reversed; and, it appearing in the record that the parties agreed that the grain and commission company should hold the grain and coal company "harmless from all liability and assume and discharge its liability herein if any exists," judgment will be here rendered that appellant have and recover of appellee the Jacksonville Grain & Commission Company $111.60 and interest thereon at the rate of 6 cent. per annum from February 1, 1915, together with costs in the court below, as well as the costs of this appeal.

⚖=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes