## GALVESTON, H. & S. A. Ry. CO. v. LYKES BROS.

(District Court, S. D. Texas, at Galveston. August 24, 1923.)

No. 615.

1. Carriers ⬤⟿30—Only lawful rate on interstate shipment is tariff rate by the route over which the shipment moved.

The only lawful rate on an interstate shipment is the tariff rate by the route over which the shipment moved.

2. Carriers ⬤⟿30—Commodity rate supersedes class rate.

Where a commodity rate is made in a tariff, it supersedes the class rate, and is the only lawful rate that may be charged.

3. Carriers ⬤⟿35—Parties to shipment not concluded by settlement at unlawful rate.

A settlement between carrier and shipper by the payment and acceptance of a charge different from the rate in the published tariff does not preclude either party from enforcing the lawful rate.

4. Carriers ⬤⟿193—Privity of contract not necessary to right to collect freight.

The delivering carrier of a through shipment may enforce payment of the through charge, though the contract was made with the initial carrier; the obligation of the consignee to pay the freight being grounded on his receipt of the goods, and the surrender by the carrier of its possession and lien.

5. Carriers ⬤⟿193—Duty to forward shipment over route having lowest rate.

Where no routing directions are given by a shipper, it is the duty of the carrier, when two routes are equally available, to forward over the one having the lower rate, and where it has not done so it is liable to the shipper, under the ruling of the Interstate Commerce Commission, for the difference between the higher and the lower rate, and by general order of the Commission the parties are permitted to make settlement on that basis.

6. Carriers ⬤⟿193—May recover freight only on basis of lowest available rate.

A carrier forwarded a shipment over a route carrying a higher rate than another route equally available; the parties settled a disputed question of freight in good faith, but not on the basis of any lawful tariff; and the carrier afterward brought suit to recover at the tariff rate. *Held*, that it could not recover the rate over the route actually used, but only the lower rate, which should have been charged on proper routing.

7. Carriers ⬤⟿193—That a longer route will give initial carrier greater portion of the haul does not justify its selection.

An initial carrier is not justified in forwarding a shipment over a route carrying a higher rate than another, because it will thereby obtain a greater portion of the haul.

8. Limitation of actions ⬤⟿28(1)—Consignee's liability for freight is on an "implied contract."

The liability of a consignee for freight is on an implied contract arising from his acceptance of the goods with knowledge that they are surrendered by the carrier in reliance on his implied promise to pay the charges, and an action against him to recover such freight is within the two-year statute of limitation of Texas.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Implied Contract.]

9. Limitation of actions ⬤⟿28(1)—Action to recover money paid under mistake not in express contract.

An action to recover money paid on a settlement, through mistake of law and fact, is not one on an express contract, and is barred in two years under the statute of limitations of Texas.

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

At Law. Action by the Galveston, Houston & San Antonio Railway Company against Lykes Bros., a Texas partnership. Judgment for defendants.

W. T. Armstrong and W. E. Cranford, both of Galveston, Tex., for plaintiff.

Maco Stewart, of Galveston, Tex., A. J. De Lange, of Houston, Tex., and Brantly Harris, of Galveston, Tex., for defendants.

HUTCHESON, District Judge. This is a suit brought by plaintiff, the delivering carrier, to recover from Lykes Bros., a partnership doing business in Texas, certain moneys claimed by the plaintiff to be due on account of a shipment of freight originating at Kissimee, Fla., a point on the Atlantic Coast Line Railway. The case is submitted on an agreed statement of facts, the substantial matters in which are:

Lykes Bros., a corporation of the state of Florida, applied to the Atlantic Coast Line for a rate on cattle from Kissimee, Fla., to New Orleans, La., and were advised that the rate was $112 per car. At that time, to wit, June, 1914, there was no through rate in force from Kissimee to New Orleans, and the quoted rate of $112 was arrived at by the application of a combination of the class rates in force on the Atlantic Coast Line for distances between 550 and 560 miles. (The distance from Kissimee to Montgomery, Ala., was 555 miles.) A rate of $56, and the lawful established rate on cattle per car from Montgomery, Ala., to New Orleans was $56.

At that time, however, there had been adopted and were in force commodity rates per car of cattle as follows: Kissimee to Jacksonville, $31; Jacksonville to Montgomery, $66.60—all over the Atlantic Coast Line; and from Montgomery to New Orleans, over the Louisville & Nashville, $56. There were also in force in June, 1914, the following lawful rates over the following routes: Kissimee to Jacksonville, over the Atlantic Coast Line, $31; Jacksonville, over the Atlantic Coast Line and Central Georgia, to Macon, $29.50; Macon to New Orleans, $62.

The question of what route the cattle should move over was not discussed between the carrier and the shipper. The bill of lading did not designate the route, but merely recited:

"Received by the A. C. L. R. R. Co. of Lykes Bros., Inc., 564 head of cattle. Consignee, Lykes Bros. Destination, La Porte, Texas,"

—together with the other usual stipulations in such bills. The cattle were actually carried by the Atlantic Coast Line from Kissimee to Montgomery, Ala., where they were unloaded and watered, and thereafter were delivered to the Louisville & Nashville Railroad, which transported them to New Orleans.

If the shipment had been routed by Macon, the Atlantic Coast Line would have gotten a shorter haul and a less proportion of the freight than if the shipment had been sent by Montgomery. Lykes Bros., in disposing and selling their cattle thus shipped, made their sale price based on the quoted rate of $112 per car to New Orleans. If Lykes Bros. had known that the route over which the cattle actually moved took a higher rate than the route by Macon, they would have instructed

the routing of the shipment by Macon, which was a reasonable, convenient, and available route.

When the shipment was delivered to La Porte, the delivering carrier, plaintiff in this cause, demanded and collected $189.24 per car, made up as follows:

| | |
|---|---:|
| From Kissimee, Fla., to New Orleans | $128 |
| New Orleans to La Porte | $ 52 |
| Feed at Montgomery | $  4 |
| Feed at New Orleans | $  5 |

Thereafter Lykes Bros. made a claim for refund on the basis of the quoted rate from Kissimee to New Orleans, and after long drawn out negotiations, in the course of which the divisional freight agent of the Atlantic Coast Line on September 4, 1915, wrote Lykes Bros.:

"The present rate on cattle from the point named in your letter, from Kissimee to New Orleans, is $112."

Plaintiff on April 7, 1916, made a refund to Lykes Bros. on the basis of $112 from Kissimee to New Orleans; the refund basis, however, adjusting the claim from New Orleans to La Porte to $57, which was the proper charge, and about which in this case there is no dispute.

This suit is brought by plaintiff on the claim that, after it had made the refund, it discovered that the refund was made in error, and instead of $128.24, the original basis figured from Kissimee to New Orleans, or $112, the basis on which the refund was made, the true rate which it should have collected and charged was $155.60, and they seek to recover the difference between $112, which defendants have paid, and $155.60 per car, on 15 cars composing the shipment. The original petition was filed June 13, 1918; the first amended petition, June 19, 1918; and its second amended petition June 15, 1920.

The defendants resist the plaintiff's claim on the grounds: (1) That the true rate applicable is $112, the basis of the refund.

(2) That if this was not the true rate, under the circumstances of this case, where the Atlantic Coast Line originally quoted that rate, and upon the exaction of more thereafter voluntarily made a settlement on the basis of that rate, the delivering carrier is now without authority to go back of the settlement and recover more.

(3) They make, but rather feebly, the contention that there is no privity between the delivering carrier and the defendants, so as to enable them to maintain this suit.

(4) They assert that, if plaintiff can recover at all, it is on the basis, not of $155.60 per car, but upon the basis of $122.50, the rate over the Macon route; and

(5) They invoke the statutes of limitations of two and four years, asserting (1) that the suit of plaintiff is not upon a written contract, and therefore is barred in two years, and (2) that, if upon a written contract, the amended pleadings filed June 15, 1920, set up a new and different cause of action from that asserted in the original petition, and therefore the cause of action now asserted is barred, even under the four-year statute.

[1] Taking up these contentions in their order, it must be admitted that the lawful charge on any shipment is the tariff rate via the route

over which the shipment moves, and that the full tariff rate is the only rate which the carrier may lawfully receive, or the person liable properly pay, and this no matter what the circumstance of the particular case. Pittsburgh v. Fink, 250 U. S. 577, 40 Sup. Ct. 27, 63 L. Ed. 1151; N. Y. C. & H. R. R. v. York, 256 U. S. 406, 41 Sup. Ct. 509, 65 L. Ed. 1016; T. & P. R. R. v. Mugg, 202 U. S. 247, 26 Sup. Ct. 628, 50 L. Ed. 1011; L. & N. R. Co. v. Maxwell, 237 U. S. 94, 35 Sup. Ct. 494, 59 L. Ed. 853, L. R. A. 1915E, 665. Unless the circumstances involve a positive act of bad faith or neglect on the part of the carrier, the recognition for the responsibility for which will do exact justice in the case, without affecting the general binding obligation upon both the carrier and the shipper to observe the lawful tariff. St. Louis S. W. Ry. Co. v. Spring River Co., 236 U. S. 718, 35 Sup. Ct. 456, 59 L. Ed. 805.

[2] Under the admitted facts in this case, the only lawful commodity rates in force via the route actually taken by the shipment was $155.60, and it is a matter too well settled by the rules of the Commission, affirmed by the courts, that where a commodity rate is made in the tariff such commodity rate is the lawful rate and the only rate that can be used; the class rates are by it superseded.

It follows, then, that the first contention of the defendant, that the lawful rate was $112, must be overruled.

[3] To its second contention, that by the settlement the carrier had precluded itself from insisting on the payment of the true rate, the slightest reflection on the point will serve to show the incorrectness of this position, for, if the first contention has been answered correctly, that the only lawful rate which the carrier can charge and the shipper can pay is the lawful published tariff, it follows inevitably, under the same authorities, that the carrier and shipper cannot do indirectly by settlement what they cannot do directly by agreement, and the second contention of the defendant must also be rejected.

[4] The third contention of want of privity is disposed of adversely to defendant by the authorities already cited, and to which may be added U. P. R. R. v. American Smelting & Refining Co., 202 Fed. 722, 121 C. C. A. 182; the authorities all declaring that the obligation of the consignee to pay the freight springs out of and is grounded validly on his receipt of the goods and the surrender of the railroad's possession and lien involved in the act of delivery.

With the fourth contention of the defendant I agree. It must, of course, be conceded, as plaintiff contends, that *mere suits for reparation on account of unlawful exactions,* through unreasonable tariffs or claims of discrimination, are triable and adjudicable by the Interstate Commerce Commission alone. T. & P. R. Co. v. Abilene, 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075; Robinson v. B. & O. Ry. Co., 222 U. S. 506, 32 Sup. Ct. 114, 56 L. Ed. 288.

But here is not a case *of the mere assertion of a reparation claim.* Here is a case in which a carrier, having made a settlement in good faith (for this is the agreement of the stipulation), now seeks to recover from the shipper, not the rate which the shipper ought in justice to have been charged, had the originating carrier acted in accordance with its obligation to the shipper, but a rate which under the circum-

stances is extortionate and unreasonable, through a practice so unjust and so contrary to the spirit and purpose of the Commercial Act (Comp. St. § 8563 et seq.), that the Interstate Commerce Commission has ·by general order waived the ordinary rules requiring such claims to be approved by the Commission, and authorized them to be adjusted voluntarily, and without the Commission's approval, upon the confession of error by the carrier responsible.

This is not a case, as stated by counsel for plaintiff, of an effort on the part of the shipper to recover reparation. This is a case where the shipper is content, and the carrier is seeking to extort from him a rate which ought not to be exacted, and which, by the express agreement of the parties, as evidenced in the settlement, it was not contemplated that they would exact.

[5] The Commission in Poor v. C., B. & Q. R. R., 12 Interst. Com. Com'n R. 469, states the situation thus:

"Where a shipper gives no routing directions, and the carrier forwards the traffic over one route when another route carrying a lower rate is equally available, the Commission holds it liable to the shipper for the difference between the higher rate and the rate applying over the less expensive route. This is a rule of obvious propriety. And the Commission has issued a general permissive order under which carriers may adjust the differences in such cases without resorting to the Commission for special authority."

[6] What more unreasonable than to say, where the undisputed facts show that a less rate was available to the carrier, and the carrier wrongfully routed the freight over the excessive route, that in a suit to upset a settlement, and recover in spite of it, the court would permit such suit to be maintained to recover a rate which ought not to have been charged. That the purpose of the act to prevent discriminations does not permit of its being used in the courts to enforce extortions is clearly foreshadowed in the opinions of the Supreme Court upon analogous questions.

In St. Louis Southwestern Ry. Co. v. Spring River Co., 236 U. S. 718, 35 Sup. Ct. 456, 59 L. Ed. 805, the Supreme Court refused to allow a recovery by the St. Louis Southwestern Railway of certain freight charges, where there had been a prior adjustment upon the computation of the actual weight of the merchandise transported. The Supreme Court said:

"The railway company * * * contends that * * * the law imposes an absolute obligation upon the shipper to pay charges estimated upon the market capacity of cars utilized, notwithstanding the settlement and good faith of all parties. To this position we cannot give assent. In the circumstances the initial carrier was charged with the duty of making these notations, and for the purposes of this suit the shipper might assume compliance with that duty. He was not required to establish actual performance. He only sought and received what was authorized by the tariff on file. Larger cars than he requested were supplied for the carrier's special accommodation, and the commands of the applicable rule addressed to the latter imposed the clerical task of recording information upon" them.

Again, in L. & N. R. R. v. Maxwell, 237 U. S. 99, 35 Sup. Ct. 496 (59 L. Ed. 853, L. R. A. 1915E, 665), the court reversed the Supreme Court of Tennessee, that court having decided against the carrier on the ground that they had misrouted the defendant, and after stating

they were unable to reach the conclusion that this ground of decision was available under the findings of fact said:

"A misstatement, or misquotation, of the rate over a given route is one thing; misrouting is a different matter. We do not think that it can be said that there is a 'misrouting,' in any proper sense, when the route given by the company is that requested by the shipper or passenger,"

—thus showing certainly by inference that the Supreme Court approved the principle invoked by the Supreme Court of Tennessee, though it denied its application.

This, then, is not a case of reparation on account of unlawful or unreasonable tariffs. The tariffs were duly and legally filed, and were duly and properly chargeable upon shipments properly traveling over those lines. This as a case of a settlement made upon the basis of an understanding between the carrier and the consignee, which is sought now to be set aside, and this court used to affirmatively impose upon the consignee a rate which he is entitled to relief from. This the carrier cannot do, but must be restricted in its recovery to that rate which should have been charged upon the proper routing via Macon.

[7] I need only refer, in order to disapprove it, to the contention of plaintiff that the Atlantic Coast Line had the right to route the freight by Montgomery, because it thereby obtained a larger portion of the haul. The authorities cited by plaintiff, McLean Lbr. Co. v. Louisville & Nashville R. R., 22 Interst. Com. Com'n R. 352, Waverly Oil Wks. v. Pa. Ry. Co., 28 Interst. Com. Com'n R. 630, and Marble Rates from Vermont Points, 29 Interst. Com. Com'n R. 607, have nothing to do with the question of an excessive or exorbitant rate imposed by a violation of the Commission's rule that the routing shall be over the cheapest available line.

Such a contention as that made by the plaintiff is only paralleled by the exorbitant practices of some piratical taxicab drivers, who, relying upon their trusty meters, claim the right to transport passengers to their destination by the most circuitous and devious way.

[8] Whether in this case plaintiff's pleadings will permit a recovery on the basis of the Macon rate it is not necessary to decide, for I concur with defendant in its fifth position, that the statutes of limitation have barred plaintiff's entire claim, and that it can recover nothing herein. In the view which I take that the suit is upon an implied and not upon an express contract, it will not be necessary for me to discuss the subordinate question, raised upon this point, of the effect of the amended pleading to let in the statute of limitation, even if the suit is upon an express contract, and I shall only here set briefly down the views which compel me to hold that the suit is upon an implied contract, and therefore, when the original petition was filed, was barred by the statutes of this state covering debts not in writing.

Counsel for plaintiff insist that the suit is upon the bill of lading, and cite as authority New v. Dennison Clay Co., 260 Fed. 70, 171 C. C. A. 106, in which it is held that a suit for freight due under a bill of lading signed by the defendant was a suit upon a promise in writing, and that the mere fact that the rate of freight was not stated in the bill was not sufficient to make the promise unwritten; the court hold-

ing, and I think correctly, that the freight rate was written into the bill of lading, and became a part of the written promise.

Counsel also cite the Texas case of St. Louis Southwestern Ry. v. Shields Grain & Coal Co. (Tex. Civ. App.) 220 S. W. 183, in which the New Case is approved and followed; but that case not only gives counsel no comfort, but in effect decides the point raised here against him. There the railroad company sued both the consignor and consignee. The trial court held that the cause of action was barred in two years. The appellate court reversed this judgment as to the consignor alone, and affirmed it as to the consignee. Here the consignors who signed the bill are not sued, while the consignees, who at no time signed any promise of any kind, are the sole defendants. Their obligation was an implied one, which arose against and attached to them because of their having received the freight.

Counsel for plaintiff suggests that about the best statement of the obligation of a consignee for freight charges is made by Judge Sanborn, in Union Pacific Ry. Co. v. American Smelting & Refining Co., 202 Fed. 723, 121 C. C. A. 182, in which he said:

"The law is well settled that such a contract is implied from the acceptance by a consignee or consignees of goods shipped under a bill of lading which contains the stipulation, the consignee or consignees paying freight, or any similar provision. * * * The reason for this rule is that the consignee accepts the goods with knowledge that the carrier looks to him for payment of the transportation charges and waives his lien for them by delivery in reliance upon the consignee's implied promise * * * that he will pay the charges. But this reason exists in all its force, in the absence of a bill of lading, wherever the consignee accepts the goods, knowing that the carrier looks to him for payment, waives his lien, and delivers the goods in the faith that he will pay the charges."

The same statement was later made by the Supreme Court in the case of Pittsburgh v. Fink; the court saying:

"The weight of authority seems to be that the consignee is prima facie liable for the payment of the freight charges when he accepts the goods from the carrier."

In this case the defendants became undoubtedly liable for the freight, and all the legally due freight, when they accepted the goods. The railroad company had the right to demand and collect it from them, but that right rested upon an implied contract, and not upon an express one, and the two, rather than the four, year statute applies. An implied contract and an express contract are necessarily exclusive of each other; they cannot coexist. This is most clearly and happily put by the Supreme Court of Texas in Phœnix Lumber Co. v. Houston Water Co., 94 Tex. 456, 61 S. W. 707:

"Evidence of an express contract would not be admissible under the allegations of, and if admitted would not establish, an implied contract. * * * If there was an express contract, there could be no implied contract arising out of the acts of performance of it. The one is destructive of the other. Two things which cannot coexist will not constitute one and the same thing."

Again, in Booth v. Houston Packing Co. (Tex. Civ. App.) 105 S. W. 46, the same rule is expressed:

"The original petition did not declare on an express contract to ship the cattle, but sought to recover on an implied contract. \* \* \* The amended petition \* \* \* sought to charge appellee on an express contract. We think the amended petition declares on a different cause of action from \* \* \* the original petition."

That a cause of action within the meaning of the Texas statutes is not founded upon a promise in writing merely because the promise in writing furnished the occasion out of which the cause of action grew is settled in Faires v. Cockerell, 88 Tex. 437, 31 S. W. 194, 639 (28 L. R. A. 528) in which the court said:

"The right of action in this case being upon the implied promise arising out of the relation of the parties, and not upon the written contract, which promise is not evidenced by writing nor founded upon a written contract, the cause of action \* \* \* was barred in two years."

[9] The defendant also contends that the cause of action is barred by limitation of two years, because it is not a suit upon the bill of lading at all, but is on its face a suit to recover back money paid under a mistake of law and fact; that such an action is necessarily not an action upon a written promise, but is barred within two years. This contention, I think, is also sound, for the plaintiff, having had possession of and having paid out money which it now seeks to recover back, is in the position of a person suing for money had and received under a mistake, which cause of action is necessarily governed by the statute of two years, rather than of four, and is therefore barred.

It being my view, then, that the plaintiff's cause of action is barred by the statute of limitation of this state of two years, it will be ordered that the plaintiff take nothing, and defendants recover their costs.