ATCHISON, T. & S. F. RY. CO. v. JUDSON
FREIGHT FORWARDING CO. et al.

No. 2265–BH.

District Court, S. D. California, Central
Division.

April 22, 1943.

Jonathan C. Gibson, M. W. Reed, L. W. Butterfield, and William F. Brooks, all of Los Angeles, Cal., for plaintiff.

Hugh Gordon, Arlo D. Poe, and J. Edward Haley, all of Los Angeles, Cal., for defendants.

HARRISON, District Judge.

This is an action by the plaintiff carrier against the defendant shippers for alleged undercharges on 105 separate shipments of household goods, and arises over the fact that each shipment was transported in two.

forty-foot cars instead of one fifty-foot car.

The question for determination is whether the shippers should have been billed for two forty-foot cars on each shipment instead of one fifty-foot car. Originally, the shippers were billed on the theory that in each instance a fifty-foot car had been ordered and that the two forty-foot cars had been furnished at carrier's convenience under what is commonly known as the two for one rule. Thereafter, the carrier determined, after an investigation by the Interstate Commerce Commission, that the lawful tariff on each shipment had not been collected, hence this litigation.

The issues are:

1. Were the two forty-foot cars furnished at carrier's convenience?

2. Is the determination of convenience of the carrier at the time of the shipment conclusive upon the parties or is it subject to re-determination by the carrier and review by this court at this late date?

3. Was a fifty-foot car ordered by the shipper in each instance?

4. Was the furnishing of two forty-foot cars in lieu of one fifty-foot car the result of a collusive agreement in violation of 49 U.S.C.A. §§ 2, 3(1) and 6(7)?

The two for one rule is set forth in Item 503 of Trans-Continental Freight Bureau East-Bound Tariff No. 3, Series I.C.C. No. 1431, and in part is in the following language:

"Section I

"Cars Furnished at Variance with Shippers' Orders at Carriers' Convenience

"Except where specifically provided to the contrary in individual items of this tariff, carrier will furnish car of dimensions or weight carrying capacity ordered by shipper, but if carrier for its convenience furnishes car of different dimensions or weight carrying capacity, the following rules will govern. * * *"

"When car of smaller dimensions or less weight carrying capacity is furnished, actual weight applies provided it is loaded to its full visible capacity or as heavily as loading conditions will permit; the balance of the shipment will be taken in another car at actual weight and carload rate, and the entire shipment will be subject to carload minimum weight applicable to the car of dimensions or weight carrying capacity

ordered (Subject to Notes 1 and 2). * * *"

While this tariff provision, in modified form, has been in effect for over thirty years, no reported cases have been found wherein the interpretation of this rule has been an issue. "Carriers' convenience" is a common term in the transportation world, yet it never has been judicially defined.

■ Under the two for one rule, "carrier will furnish car of dimensions or weight carrying capacity ordered by shipper". Thus, it would appear that primarily it is the duty of the carrier to furnish the equipment ordered and the shipper is entitled to have his order filled in accordance with such order without deviation, "but if carrier for its convenience furnishes car of different dimensions or weight carrying capacity, the following rule will govern". No responsibility for the substitution of equipment is placed upon the shipper. This is the sole responsibility of the carrier, and completely within its control. The said rule cannot be brought into play until the carrier has received an order for a car of specified size and if no order for such car is placed, the carrier has nothing before it for consideration. Therefore, if two forty-foot cars were appropriated by the shippers without having first ordered a fifty-foot car, the shippers would not be entitled to the benefits of the two for one rule.

■ ■ "Carriers' convenience" is a difficult term to define and has been so recognized. Lake Shore & M. S. Ry. Co. v. Smith, 173 U.S. 684, 19 S.Ct. 565–568, 43 L.Ed. 858. Shippers argue that the ordinary meaning of the phrase should be accepted, while carrier believes that in the transportation field it has a technical meaning. Originally, the two for one rule first allowed a substitution when the carrier "is unable" to furnish the car ordered; later, the rule allowed the substitution "if practicable". When the causes of action herein accrued, it became a matter of "carriers' convenience". Under an amendment effective December 8, 1941, the carrier "will endeavor" to furnish the car ordered. Unquestionably, the word "convenience" is used to give the carrier wide discretion in the operating problems in meeting shippers' orders for varying types of equipment, but it certainly means more than at carriers' pleasure or will. The fickle whim of the carrier would not be the controlling

792

factor in determining whether the shipper would receive the specified equipment. Most assuredly "carriers' convenience" was never intended as a loophole for favoritism. The term must have a definite fixed meaning otherwise uniformity of rates would be impossible. In my opinion, the carrier before making a substitution for the car ordered must balance its operating advantages with the disadvantages. To me the term signifies that the car ordered is not readily available and not operatively advantageous for the carrier to furnish, before it is justified in making a substitution.

 Irrespective of the precise meaning of the term, before the carrier can disregard its duty to furnish the equipment ordered, a determination of convenience must be made by an agent of the carrier. The evidence discloses the Los Angeles freight agent was authorized to exercise this discretion.

The carrier contends that its agent made an erroneous determination of convenience; that fifty-foot cars were at all times readily available and there was no reason whatsoever for the failure of the agent to furnish fifty-foot cars. The shippers introduced evidence tending to establish that the convenience of the carrier had been subserved by furnishing smaller cars. The evidence establishes the fact that under the circumstances indicated carrier's agent might have been justified in arriving at either conclusion in determining whether to furnish one larger or two smaller cars. In the absence of collusion, I would hold that the agent had not abused the discretion vested in him by substituting the smaller cars.

Carrier contends: "The policy of the law in favor of the absolute and inflexible enforcement of the tariff requires that the correctness of this determination should be subject to review at any time within the statute of limitations. If it has reason to believe the original determination with respect to carrier's convenience to be erroneous, it is the duty of the carrier to re-examine the question and to bring suit if necessary for such undercharges as may be discovered. It is not precluded from recovery by any estoppel or by any recitals in the bill of lading which may be contrary to the true facts. This may be a hard rule as respects the shipper who is sued under such circumstances, but this is what the law requires.", and cites Union Pacific Railroad Co. v. United States, 313 U.S.

450, 61 S.Ct. 1064, 85 L.Ed. 1453; Baltimore & Ohio R. Co. v. United States, 305 U.S. 507, 59 S.Ct. 284, 83 L.Ed. 318; Vandalia R. Co. v. United States, 7 Cir., 226 F. 713. I feel that these citations are not applicable for the reason that each covers an agreement between the carriers and the shippers, giving the shippers by its terms a preference, while under the so-called two for one rule, the substitution is the sole act of the carrier and the shipper has no control over the substitution and is required to accept equipment different from that ordered. The shipper is not liable for an act to which he is not a party.

 I therefore hold that when the agent of a carrier determines to substitute two cars for the one ordered under the so-called two for one rule, in good faith and dealing with the shipper at arm's length, said determination is conclusive and is not subject to re-determination by the carrier and review by the courts. I believe this conclusion is in harmony with St. Louis Southwestern Railway Co. v. Spring River Stone Co., 236 U.S. 718, 35 S.Ct. 456, 458, 59 L.Ed. 805, wherein the court said: "In effect the railway company now contends that, as the evidence fails affirmatively to show the notations required by rule 81, the law imposes an absolute obligation upon the shipper to pay charges estimated upon the marked capacity of cars utilized, notwithstanding the settlement and good faith of all parties. To this position we cannot give assent. In the circumstances the initial carrier was charged with the duty of making these notations; and for the purposes of this suit the shipper might assume compliance with that duty,—he was not required to establish actual performance. He only sought and received what was authorized by the tariff on file. Larger cars than he requested were supplied for the carrier's special accommodation, and the commands of the applicable rule addressed to the latter imposed the clerical task of recording information within its peculiar knowledge upon documents for whose preparation it was responsible."

To hold otherwise would destroy the object of the rule since a shipper might and probably would refuse to accept the substituted cars because of the hazards of litigation during the statutory period. The shipper has the right to know when his shipment is accepted and the exact transportation charges; and no act of the carrier should be permitted to make effective

a schedule of charges which is not within the published tariffs. The re-determination and resultant litigation could be used very easily as a means of discrimination and abuse.

While I have found no case directly in point, two I.C.C. cases tend to support my conclusions.

In Cleveland Provision Company v. Ann Arbor R. Co., 50 I.C.C. 293–296, the following language is used: "In several cases we have required the establishment of a two for one rule where carriers have provided double-deck rates and minima different from single-deck rates and minima, and in a number of cases have required the establishment of a two for one rule with respect to ordinary equipment. Such a rule has become almost universal in cases where carriers' tariffs provide varying minima according to the size of the car. Our decisions in those cases were upon the ground that the carriers, having provided rates dependent upon certain equipment used, held themselves out to furnish such equipment, *thus conferring upon the shipper a legal right to demand that equipment and to have the charges assessed accordingly. A carrier is entitled to a reasonable time to furnish equipment, but if before such time expires or thereafter it furnishes equipment different from that requested, then such equipment is furnished for its own convenience and the shipper should be saved harmless.*" (Italicizing supplied)

Again in Springer v. El Paso & Southwestern Railroad Co., 17 I.C.C. 322, the Commission said: "Complainant delivered to the defendant Chicago Great Western Railway on October 9, 1908, at Chicago, Ill., a shipment of furniture and requested a 50-foot car. The company furnished for its own convenience one 40-foot car and one car of smaller dimensions. * * * Complainant demands reparation in the sum of $46.83, the difference in the rate applicable to a 50-foot car, and the rate which was assessed on the shipment. The entire shipment could have been loaded into a 50-foot car, the minimum on which was 23,100 pounds, and it is only by reason of the failure of the initial carrier to furnish the car ordered that complainant was compelled to pay a higher charge. The bill of lading issued by the Chicago Great Western Railway Company shows that a 50-foot car was ordered, and that two smaller cars were furnished." See,

also, Galveston, H. & S. A. Ry. Co. v. Lykes Bros., D.C., 294 F. 968, at page 972.

The third and fourth issues raised must of necessity be considered together, inasmuch as the same are primarily issues of fact.

The shippers are engaged in the forwarding of freight in carload lots and have their place of business across the street from the carrier's freight depot in Los Angeles. About 1936, the freight agent of the carrier under authority from his superiors and Edgar H. Brockelmann, manager of the household department of the Judson Freight Forwarding Division of the National Carloading Corporation had an understanding, that upon the order of one fifty-foot box car, two forty-foot cars would be furnished, under the guise of "carriers' convenience". This practice was continued until February, 1941, when it was stopped following an investigation by the Interstate Commerce Commission. Thereafter, upon an order for a fifty-foot car, a fifty-foot car was furnished. During the entire period from about 1936 to February, 1941, with few exceptions, shippers' household goods shipments went forward in two forty-foot cars.

The shippers would prepare the waybills and write thereon "1-50 foot car ordered, 2-40 ft. cars furnished at carrier's convenience". The waybill would be approved and the records of the carrier from there on would treat the shipment under the so-called two for one rule, and the shippers paid freight in accordance with said rule.

The carrier offered evidence tending to show that it was the usual practice for the shippers to appropriate the cars without placing an order therefor. Car orders were usually handled over the telephone. No written orders were required by the carrier. The records of the carrier disclose an absence of pencil memorandum usually made by the shipping clerk upon the receipt of a telephonic car order and argues that a lack of memorandum indicating a car order would have established no such order had been received. On the other hand, carrier's witness, Mendelsohn, testified that Brockelmann after placing an order for a fifty-foot car with the car clerk would advise that he wanted two forty-foot cars. The records and files of the carrier, taken with the oral testimony, do not satisfy me that the cars used by shippers were usually appropriated but rather tend to convince me that generally a fifty-

foot car was ordered with the understanding that two forty-foot cars would be furnished. But it is impossible to ascertain the true condition in this·respect as to each shipment. In this regard the records of the carrier are unsatisfactory and fall within the purview of St. Louis, Southwestern R. Co. v. Spring River Stone Company, 236 U.S. 718, 35 S.Ct. 456, 59 L.Ed. 805. The carrier contends that the shippers appropriated the cars used in the various shipments without placing an order for the same. On this issue I find against the carrier.

The shippers attempt to negative the collusive agreement by offering evidence that the substitution of two forty foot cars was of no advantage to the shippers. The evidence in this respect is conflicting, but suffice it to say that the evidence discloses that the shippers wanted, and in effect ordered, the substituted cars for the shipment of bulky light freight and it is self-evident that eighty feet of floor space for loading was a distinct advantage to the shipper over fifty-feet of floor space, and I so find.

■■ ■■ I therefore find, by clear and convincing evidence, that fifty-foot cars were ordered with the distinct understanding that the carrier would furnish two forty-foot cars under the guise of "carrier's convenience", when as a matter of fact it was for the convenience of the shippers, and that both carrier and shippers knew that "carrier's convenience" was not actually taken into consideration, but the substitution was made to favor the shippers in direct violation of 49 U.S.C.A. §§ 2, 3 (1) and 6(7). Not only were these sections violated, but the parties also violated 49 U.S.C.A. § 20(7), in that both parties falsified the records in order to cover up their unlawful arrangement.

The courts of the land have consistently given said sections vitality and they have in no wise been weakened by judicial interpretation.

All practices, schemes or devices whatsoever that run counter to said sections are prohibited. All shippers are supposed to be on equal terms. Concessions, preferences, advantages and rebates counter to the fixed rates duly posted and published are now prohibited and are measured by results. The courts are charged with the· duty of cutting through subterfuge and pretense, getting at the very roots of every form of discrimination. A few of the many leading authorities supporting the above statement are as follows: New York, New Haven & Hartford Railroad Co. v. Interstate Commerce Commission, 200 U.S. 361, 26 S.Ct. 272, 50 L.Ed. 515; Armour Packing Company v. United States, 209 U.S. 56, 28 S.Ct. 428, 52 L.Ed. 681; United States v. Koenig Coal Company, 270 U.S. 512, 46 S.Ct. 392, 70 L.Ed. 709; Union Pacific Railroad Company v. United States, 313 U.S. 450, 61 S.Ct. 1064, 85 L.Ed. 1453; Baltimore & Ohio Railroad Company v. United States, 305 U.S. 507, 59 S.Ct. 284, 83 L.Ed. 318; Great Northern Pac. S. S. Co. v. Rainier Brewing Co., 9 Cir., 255 F. 762.

■■ The shippers maintain that the pleadings in this action were not broad enough to permit the reception of evidence of collusion.

Carrier's complaint is in the form of an amplified common count alleging a balance due on each shipment. Carrier at all times sought to prove that there were certain amounts due on each shipment and the evidence of collusion was offered to support the allegations of the complaint. This is not an action for damages, but rather an action for a balance due on an indebtedness. Common counts permit the admission of evidence herein objected to by shippers. Firpo v. Pacific Mutual Life Insurance Co., 80 Cal.App. 122, 251 P. 657, 658, the court said: "Upon the record presented, there is but one question open to discussion—Does a common count for money had and received put in issue fraud or misrepresentation on the part of the defendant through which the money sued for was received by the defendant? The appellant insists that this cannot be, because, in an action for fraud, the fraud as well as the damage resulting therefrom must be specially pleaded. The obvious answer is that this is not an action for fraud or for damages, but is one in assumpsit upon an implied contract to repay the money received by the appellant. The rule is elementary that a party may elect to sue for damages resulting from, the fraud,·or to waive the tort and sue for the money paid." See also Stone v. White, 301 U.S. 532, 302 U.S. 639, 57 S.Ct. 851, 81 L.Ed. 1265, 82 L.Ed. 497; 12 R.C.L. p. 418, par. 165.

The complaint conforms to Rule 8 of the Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c, and follows closely the suggested forms attached to said rules.

■ Counsel for shippers assumes that the evidence offered by carrier tending to prove collusion between the parties is equivalent to attempting to prove fraud, but collusion as herein used is synonymous with conspiracy. Words and Phrases, Perm. Ed., vol. 7, p. 639. Consequently, the evidence offered was for the purpose of'proving a concert of action for the purpose of avoiding the published tariffs. When a rate different from the published tariff rate has been collected, then either the carrier or the shipper has a cause of action for an indebtedness due.

■ When this evidence was offered, shippers did not claim surprise or ask for a continuance to meet this issue. Counsel tried this case on the theory that said evidence was admissible and it was evident that counsel was fully prepared. Under such circumstances, any error in this respect would be harmless (Rule 61, F.R.C.P.) and the pleadings could be amended even after judgment to conform to the evidence (Rule 15(b), F.R.C.P.). Rule 54(c) of the Federal Rules of Civil Procedure requires this court to render relief to the party entitled to the same and it would be absolutely contrary to the spirit of said rules for this court to permit a technicality to preclude a decision on the merits.

■ Under shippers' contention an illegal contract in the form of a bill of lading would be absolutely binding, and the court would be helpless in attempting to ascertain the truth. Such argument falls under its own weight. Evidence is admissible to show that an agreement legal on its face was in fact an illegal transaction. 20 Am.Juris. p. 957–8; Miller v. Anderson, 183 Wis. 163, 196 N.W. 869, 34 A.L.R. 1529; Houghton v. Burden, 228 U.S. 161, 33 S.Ct. 491, 57 L.Ed. 780; Farrington v. Stucky, 8 Cir., 165 F. 325.

Shippers further contend that the bill of lading is the contract between the parties and the admission of testimony attempting to vary its terms is in violation of the parol evidence rule.

■ ■ Inasmuch as the contract between the parties was in violation of law and contrary to public policy, it was a nullity and not binding on either party. Freight charges are fixed by the tariff rate and in effect fixed by law, and any bill of lading that attempts to fix a rate contrary to the legal rate is ineffectual.

In McFadden v. Alabama Great Southern R. Co., 3 Cir., 241 F. 562, 565, the court also well said: "In approaching this question we lay aside all considerations of conduct, intention, mistake and misunderstanding respecting the rate paid, for the law is very well settled that the Act to Regulate Commerce demands not only that the carrier shall charge but that the shipper shall pay the legal rate. The contract between carrier and shipper is no longer a contract as to rates; it is merely a contract that the carrier will render transportation service when the shipper pays the legal rate. When the transportation is interstate, the interstate rate is the legal rate, and that rate must be demanded and paid, for both the carrier and shipper are charged with notice of it; and if a lesser rate is charged and paid, intentionally or innocently, recovery must be had against the shipper for the difference, in order that the policy of the law against unjust discrimination may be carried out."

Again in Louisville & N. R. Co. v. Dickerson, 6 Cir., 191 F. 705–709, the court said:

"The cardinal purpose of the provisions for the public establishment of tariff rates is to secure uniformity, reasonableness, and certainty of charges for services. A rate once regularly published is no longer merely the rate imposed by the carrier, but becomes the rate imposed by law; and routes and rates once so established become matter of public right and forbid private contract inconsistent therewith. It results that, under the commerce act, a stipulation in a bill of lading for a rate greater or less than the published tariff is void. Gulf, Colorado & S. F. Ry. Co. v. Hefley, 158 U.S. 98, 102, 15 S.Ct. 802, 39 L.Ed. 910; Texas & Pacific Ry. Co. v. Mugg, [& Dryden], 202 U.S. 242, 245, 26 S.Ct. 628, 50 L.Ed. 1011; Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553, [9 Ann. Cas. 1075]; Poor v. Chicago, B. & Q. Ry. Co., 12 I.C.C. 418; Carstens Packing Co. v. Butte, A. & P. R. Co., 15 I.C.C. 432. By the establishment of the tariff in question the defendant became obligated to the public to transport over the route and at the rate established. It seeks to escape liability for breach of this obligation by setting up a private agreement or regulation which, by way of limitation upon its public liability, directly affects the cost to the shipper of the carriage between the place

796

of shipment and the place of consignment. This we think it was not competent for defendant to do. To so permit would be to open the door to evasions of public duty. It seems clear that the regulation in question immediately affected the rates for shipment between the points indicated. It directly increased the lawfully established and agreed compensation for the carriage. A regulation having such effect is required to appear in the defendant's tariff, and not so appearing is ineffective. It is of interest to note that in Southern Pacific Co. v. Interstate Commerce Commission, 200 U.S. 536, 26 S.Ct. 330, 50 L.Ed. 585, a provision allowing the initial carrier to route traffic was contained in the published tariffs. Attention is also called to certain holdings of the Interstate Commerce Commission stating the necessity of including in the tariffs certain rules there in question. Springer v. El Paso & Southwestern R. Co., 17 I.C.C. 322, 323, and cases there cited.

"The bill of lading provision being thus ineffective, it is immaterial that the roads over which the diverted shipments were carried had the right, in the absence of an established joint rate, to charge their local tariff rates. In the view we have taken of the case, we are not called upon to interpret the term 'necessity' in the bill of lading provision."

See Vol. 9 Am.Juris. p. 684, par. 430; Keogh v. Chicago & Northwestern Railway Company, 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183; Baldwin v. Scott County Milling Co., 307 U.S. 478, 59 S.Ct. 943, 83 L.Ed. 1409; Louisville & Nashville Railroad Company v. Central Iron & Coal Company, 265 U.S. 59, 44 S.Ct. 441, 68 L. Ed. 900; New York Central R. Co. v. Trans-American Petroleum Corp., 7 Cir., 108 F.2d 994–996, 129 A.L.R. 206.

The shippers, in attacking the sufficiency of the complaint and the admissibility of certain evidence in this case, appear to have overlooked the fact that this is not the ordinary suit, where the only parties involved are the litigants themselves. This is an action involving public policy. It was not only the right but the duty of the carrier to bring this action. Pennsylvania R. Co. v. Fox & London, Inc., 2 Cir., 93 F.2d 669–671; Louisville & N. R. Co. v. Williamson, 5 Cir., 87 F.2d 34, 35; 13 C.J. S., Carriers, § 393, p. 873.

■ The carrier cannot waive the statute of limitations. Pennsylvania R. Co. v. Midstate Horticultural Co., Inc., Cal.App., 124 P.2d 902.

■ ■ Nor has it the right to compromise (A. J. Phillips Company v. Grand Trunk Western Railway Company, 236 U. S. 662, 35 S.Ct. 444–446, 59 L.Ed. 774), but must collect the full charges. It is the duty of this court not to permit, through legal technicalities, a shipper to escape the payment of the legal charges. If shippers' contentions were to be sustained, the court would, in effect, be lending its hand in permitting a shipper to gain an advantage, that the law prohibits. A carrier could thus enable a shipper to gain an advantage by filing a defective complaint or purposely limiting the issues by his pleadings. However, in this case there are no indications that the carrier has in any way attempted to avoid its legal but unpleasant duty. Counsel for carrier have, with ability, vigorously prosecuted this action.

I therefore hold that the pleadings are sufficient to permit evidence of collusion and that the parol evidence rule has not been violated.

The parties have stipulated that the higher freight charges claimed by the plaintiff in each of said causes of action are lawfully applicable in the event the court finds that the two smaller cars were not lawfully and properly substituted for the larger car ordered by the shippers.

It is also stipulated that any judgment rendered in favor of the plaintiff should be rendered against the defendant National Carloading Corporation.

Plaintiff is entitled to judgment on said 105 causes of action against the defendant National Carloading Corporation, in the amounts asked in each of said 105 causes of action.

Plaintiff is directed to expeditiously submit its proposed findings of fact, conclusions of law and judgment for signature.