**WEST v. CONRAD et al.**
No. 12194.

United States Court of Appeals
Ninth Circuit.
Oct. 20, 1949.

George W. Manierre and Paul G. Breck-enridge, Los Angeles, Cal., for appellant.

Arnold Leader, Leonard Wilson, Los Angeles, Cal., for appellees.

Before BONE and POPE, Circuit Judges, and BLACK, District Judge.

BONE, Circuit Judge.

Appellee, W. E. Conrad, defendant be-low, is the owner of a duplex house in Los Angeles, California. An OPA ceiling rental on one-half of the house (an eight room unit with which this case is con-cerned) had been established at $75 per month. Prior to February 1, 1947 the unit had been rented by appellee for that amount. The house was situated in a district which was primarily residential but which had been zoned for business. Appel-lee advertised in newspapers seeking to rent the property for business purposes.

Appellant, Mabel E. West, answered the advertisement and on March 4, 1947 rented the property for a period of two years under a written lease at a rental of $350 per month. A term of the lease provided that the property ("that certain Studio dwelling house and its appurtenances") was to be used as a "Guest House or for any other lawful purpose." The evidence indicated (and the trial court so found) that when the lease was executed, the parties intended for appellant to use the

house for a "rest home" for ambulatory patients. Appellant and her husband then owned a sanitarium in another part of the city.

Appellant occupied the premises (to-gether with various subtenants, some of whom were apparently "patients") for more than a year, paying the $350 rental each month. She then learned of the $75 "ceiling" and brought this action to re-cover liquidated damages in treble the amount of excess rental paid in the past year, under authority of § 205 of the Housing and Rent Act of 1947, 50 U.S.C.A. Appendix, § 1895. Appellant seeks to re-cover in this action the total amount of $9,900 (three times the amount of $3,300, the alleged overcharge) plus costs and a reasonable attorney's fee.

The trial court, after hearing the evi-dence, found (Finding VI): "that at the time of the making of said lease as here-tofore mentioned, it was the mutual in-tention and contemplation of the parties that the premises were to be used by the plaintiff for business purposes, more par-ticularly, for the purpose of plaintiffs con-ducting therein a rest home for ill and infirm persons or so-called patients of an ambulatory nature, and not for the pur-pose of plaintiff occupying said premises for housing or dwelling purposes within the scope of said term as used in the Housing and Rent Act of 1947, or said Act as amended."

Thereupon, it concluded that defendant had not violated the provisions of the Act, and accordingly entered judgment for the defendant. This appeal is from that judg-ment.

Appellant contends that since the written lease provided that the property could be used for any lawful purpose, evi-dence to show that a narrow particular purpose was actually intended by the par-ties should have been excluded by the parol evidence rule. We do not agree. Parol evidence is admissible to show the legality or illegality of a contract.[1] If the

1. Norfolk Southern Bus Corp. v. Virginia Dare Transportation Co., 4 Cir., 159 F. 2d 306, certiorari denied 331 U.S. 827, 67 S.Ct. 1349, 91 L.Ed. 1842; Atchison,

exact terms of a lease were controlling in cases brought under the Housing and Rent Act, the policy of Congress ("for the prevention of inflation and for the achievement of a reasonable stability in the general level of rents * * *", 50 U.S.C.A.Appendix, § 1891(b)) could easily be circumvented. The Housing Expediter has provided in Rent Regulation 1388.1181, section 2, 11 F.R. 12055, October 16, 1946 that "Regardless of any contract, agreement, lease, or other obligation heretofore or hereafter entered into, no person shall offer, demand or receive any rent for or in connection with the use or occupancy * * * of any housing accommodations * * * higher than the maximum rents * * *."

An important question is whether the findings support the conclusions and judgment. The court made no finding concerning the actual use to which the property was put (i. e., whether it was *used* as a "housing accommodation" or as a business outside the scope of housing accommodations). The issue here was determined solely from what the court found to be the original intention of the parties. We think that the trial court should have determined and found whether the premises were, or were not, actually used for and as "housing accommodations." (See definition of housing accommodations, infra.) There is authority for the principle that even if the original intention of the parties was that property was to be used for a "non-housing business," if it was subsequently used for dwelling purposes, and the lessor knew of this use, the Act would apply.[2] We see no reason to quarrel with this view of the law. The record shows that appellee lived in the other half of the duplex house and was therefore in position to know the actual character of the occupancy by appellant.

Further, the finding quoted above does not appear to resolve, *from a factual standpoint,* the question of whether or not the property actually was a "housing accommodation." Section 202 of the Housing and Rent Act of 1947, 50 U.S.C.A.Appendix, § 1892, defines "housing accommodations" as, "any building, structure, or part thereof, or land appurtenant thereto, or any other real or personal property rented or offered for rent for living or dwelling purposes (including houses, apartments, rooming or boarding-house accommodations, and other properties used for living or dwelling purposes) together with all privileges, services, furnishings, furniture, and facilities connected with the use or occupancy of such property."

Regulations promulgated by the expediter do not further define the term. However, it will be seen that some "businesses" (apartments, rooming-houses and boarding-houses, i. e., those which furnish to others dwelling places and services normally incident thereto) are within the scope of the Act. See Woods v. Cohen, note 2 supra. Commercial businesses (e. g. stores, offices, etc.) are clearly not covered by the Housing Act. Thus the trial court's finding that a business purpose was intended by the parties does not sufficiently aid in determining whether the unit was an actual "housing accommodation."

The more particular finding that a "rest home for ill and infirm persons" was intended also fails to resolve this particular issue. The terms "rest home" and sanitarium are not defined in the Act or regulations and they do not appear to identify any particular type of enterprise or activity either within or without its scope and applicability. A "rest home" or sanitarium of course furnishes a dwelling place for its patients or occupants. It may also furnish, to a greater or lesser degree, services not normally incident to housing accommodations, e. g., nursing and medical care and attention.

The issue is whether this particular rest home was or was not a "housing accommodation" within the scope of the

T. & S. F. Ry. Co. v. Judson Freight Forwarding Co., D.C., 49 F.Supp. 789, affirmed National Carloading Corp. v. Atchison, T. & S. F. Ry. Co., 9 Cir., 150 F.2d 210.

2. Paxson v. Smock, D.C., 73 F.Supp. 793; cf. Woods v. Cohen, 5 Cir., 171 F.2d 888.

statutory definition. Its status must be determined by whether the primary use of the property was the furnishing of a mere dwelling place for its occupants, or the furnishing of medical and nursing facilities to its patients. The finding that the house was intended to be used as a rest home and not for housing or dwelling purposes (in the absence of determination of the issues discussed above) was not sufficient to support the conclusion that appellee had not received payments of excess rent (Finding VII to this effect is in essence a conclusion of law).

Without additional findings of the character above indicated, we are unable to determine the validity of the conclusions of law and the judgment. The case is therefore remanded to the trial court with directions to make and enter such further findings with leave to amend the conclusions of law and judgment to conform to the findings.