## Illinois Central Railroad Company v. Stimson.

(Decided January 30, 1925.)

### Appeal from Daviess Circuit Court.

1. Carriers—Where Petition in Action for Loss of Goods was Amended More than Two Years and a Day After Delivery Action Held Barred as Not Brought Within Required Time.—Where petition against initial carrier for conversion of goods by delivering carrier was amended more than two years and one day after delivery of goods, within which bill of lading required actions to be brought, to claim damages for breach of contract, it was barred by limitation.

2. Carriers—No Common-Law Liability on Initial Carrier for Acts of Delivering Carrier.—There is no common-law liability on part of initial carrier for what happens to shipment while in hands of delivering carrier, and one suing initial carrier must bring his case within Interstate Commerce Act (U. S. Comp. Stats., section 8563 et seq.).

3. Carriers—Initial Carrier Not Liable to One Not Shown to be Holder of Bill of Lading.—In action by one shipping goods to his own order against initial carrier for goods alleged to have been lost by delivering carrier, where plaintiff was not shown to be lawful holder of bill of lading, under U. S. Comp. Stats., section 8604a, he could not recover.

4. Carriers—Initial Carrier Only Liable for Loss of Goods while in Transit.—Under the Interstate Commerce Act (U. S. Comp. Stats., section 8563 et seq.), the initial carrier is not liable for any and every loss or injury to goods, but only for loss or injury occurring while goods are in transit.

5. Carriers—Initial Carrier Not Liable for Acts of Delivering Carrier as Warehouseman.—An initial carrier is only liable for acts of delivering carrier committed as carrier proper, and not while delivering carrier is holding goods as warehouseman.

6. Carriers—Initial Carrier's Obligation Ceases when Goods Delivered in Good Condition to Original Destination.—The obligation of initial carrier for loss or injury to goods in transit ceases when goods are delivered in good condition at destination to which they were originally consigned.

7. Carriers—Burden on Plaintiff to Prove Loss of Goods while Delivering Carrier Held Same as Carrier.—In action against initial carrier for loss of goods alleged to have been removed from car while in hands of delivering carrier, burden was on plaintiff, in view of provision in bill of lading that, after 48 hours from notice of arrival, delivering carrier held goods as warehouseman, to prove loss occurred during such 48-hour period.

8. Carriers—Plaintiff Held Not to have Sustained Burden of Proving Loss Occurred while Delivering Carrier Acting as Carrier Rather than Warehouseman.—In action against initial carrier for loss of goods alleged to have been removed from car while in possession of delivering carrier, plaintiff held not to have sustained burden of proving that loss occurred during time delivering carrier was holding goods as carrier rather than as warehouseman.

9. Carriers—Initial Carrier Not Liable for Entire Shipment, where Only Portion Thereof Lost.—In action against initial carrier for loss of goods removed from car while in hands of delivering carrier, an instruction permitting plaintiffs to recover for entire value of shipment, where only portion thereof was removed, held erroneous, since initial carrier is only liable for portion that may have been lost in carriage.

10. Carriers—Initial Carrier Not Liable for Goods Delivered and Sold for Charges.—In action against initial carrier for loss of goods removed from car while in possession of delivering carrier, defendant is not liable for portion of goods properly delivered and which plaintiff permitted to be sold for charges.

11. Carriers—Entitled to Allowance for Freight, Storage, Demurrage, and Advertising for Public Auction, Less Amount Goods Sold for.—Where delivering carrier, permitting removal of part of goods from car, after retaining balance in warehouse for some time, sold it at public auction after proper advertising, initial carrier sued for loss of goods so removed was entitled to allowance for freight, storage, demurrage, and advertising, less sum for which goods sold.

THOMAS E. SANDIDGE and SANDIDGE & SANDIDGE, TRABUE, DOOLAN, HELM & HELM and R. V. FLETCHER for appellant.

E. B. ANDERSON for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Reversing.

The appellant seeks to reverse a judgment for
$877.64, with interest from July 15, 1916. Appellee
began this action against appellant as the initial carrier
of an interstate shipment. On June 30, 1916, J. V. Stimson & Co., a partnership composed of J. V. Stimson and
D. C. Stimson, shipped a car of oak lumber from Owensboro, Kentucky, to Buffalo, N. Y., consigned to their own
order, with directions that the Buffalo Veneer Company
should be notified of its arrival. The bill of lading for
this shipment was attached to a sight draft drawn by the
shippers on the Buffalo Veneer Company, and which was
forwarded by a bank in Owensboro to one in Buffalo for
collection.

The car arrived in Buffalo on July 13, 1916, and the
Buffalo Veneer Company was immediately notified. As
the draft was not paid, Messrs. J. V. Stimson and D. C.
Stimson went to Buffalo to see about it. They arrived
there some time about the latter part of September, and
on investigation, found that about one-third of the contents of the car had been removed. The Buffalo Veneer
Company offered to execute a note for the portion of the
lumber that had been removed, but the Stimsons declined
to accept it, and the car remained on the side track until
November 29. On that date the Erie Railroad Company,
which was the delivering carrier, moved this car to its
warehouse, where it was unloaded on December 1, and
counted and stored in the warehouse. Of the 10,608 feet
shipped, only 6,570 feet then remained. This lumber
was held in storage, subject to the order of J. V. Stimson
& Company, until March 20, 1919, when, after proper advertising, it was sold at public auction for $140.00.

On November 19, 1917, the appellee, D. C. Stimson,
alone, began this suit and asked judgment for $998.20,
the total value of the entire carload of lumber, alleging
in his suit that the defendant had converted it to its own
use. Appellant demurred to the petition. This demurrer was overruled. It reserved exceptions to the
court's ruling and filed answer, denying any conversion.
It alleged that only 4,038 feet of this lumber was lost,
and that that was not taken from the car until more than
forty-eight hours after notice had been given of its arrival in Buffalo, and that when that was taken from the
car the carriage of this car had ceased, and that the ap-

pellant's liability had ceased, and that this car was then being held by the Erie Railroad as a warehouseman for appellee.

Appellant also filed a counterclaim with its answer, in which it asked judgment for $13.20 for advertising, $121.56 for freight, $115.11 demurrage, and $327.00 storage charges on the lumber, or a total of $576.76.

On May 21, 1923, the appellee was permitted to file an amended petition in which he departed from his original tort action for conversion, and set up a claim under his bill of lading for breach of contract. Appellant moved to require him to elect. The motion was sustained, and appellee elected to prosecute his action for breach of contract. Appellant answered this amended petition and set out the following provisions of the bill of lading:

"and suits for loss, damage or delay shall be instituted only within two years and one day after delivery of the property, or, in case of failure to make delivery, then within two years and one day after a reasonable time for delivery has elapsed."

Appellant alleged that this lumber was delivered in Buffalo on July 13, 1916, that the amendment which set up breach of contract was filed May 21, 1923, and pleaded and relied upon limitation. A demurrer was filed to this answer, but it was not passed on and the case was tried without this answer having been denied or controverted.

At the conclusion of all the evidence, appellant asked for peremptory instruction to find for it, which was overruled. The matter was submitted to the jury and resulted in a verdict for $877.64 in favor of appellee.

It is contended as a ground for new trial that the court erred in refusing to give a peremptory instruction for appellant at the conclusion of all the evidence. It is right, because its plea of limitation was uncontroverted by the pleadings and undisputed by the evidence. Peremptory instruction should have been given for another reason. There is no common law liability on the part of the initial carrier for what happens to a shipment while in the hands of the delivering carrier; it was incumbent on the appellee if he hoped to recover, to bring his case within the terms of the Interstate Commerce Act, which act alone imposes a liability on the initial carrier. It was necessary for the appellee to show a compliance

with the requirements of that act in order to claim the benefits thereof. This he wholly failed to do. The last we hear of the bill of lading in the present case it had been forwarded with a draft attached by an Owensboro bank to a bank in Buffalo. Appellee did not prove that he even held the bill of lading, much less show that he was the lawful holder thereof. From what appellee testified on the subject it seems that the bill is still in the hands of the Buffalo bank, while the statute expressly provides that the initial carrier shall only be liable to the party who has both the actual possession thereof and the right of property therein. See section 8604a U. S. Statutes.

Peremptory instructions should have been given for still another reason: The Interstate Commerce Act does not make the initial carrier liable for any and every loss or injury to goods, but only for loss, damage, or injury while the goods are in transit. Section 5 of the present bill of lading expressly provided that after 48 hours from the time notice of the arrival of the shipment had been sent, the delivering carrier should hold same as a warehouseman, and not as a carrier. This has been upheld by the United States Supreme Court. Sou. Pac. R. Co. v. Prescott, 240 U. S. 632, 36 Sup. Ct. 469; 60 L. Ed. 836.

It has also been repeatedly and uniformly held that an initial carrier is only liable for what the delivering carrier does as a carrier proper, and not for what it does while holding goods as a warehouseman. Adams Seed Co. v. Chicago & Great Western Ry. Co., 181 Iowa 1052; L. R. A. 1918B, 622, 165 N. W. 367. The obligation of an initial carrier ceases when the goods shipped are delivered in good condition at the destination to which they were originally consigned. Barrett v. N. P. Ry. Co., 29 Idaho 139, 157 P. 1016; Parker-Bell Lumber Co. v. G. N. Ry. Co., 69 Wash. 123, 124 Pac. 389, 41 L. R. A. (N. S.) 1064; Hogan Milling Co. v. Union Pac. R. Co., 91 Kan. 783, 139 Pac. 397.

In order to bring himself within the Interstate Commerce Act and to sustain an action against the initial carrier, the appellee had the burden of proving that the removal of the lumber took place while the delivering carrier held same as a carrier. In other words, appellee had to prove that the removal took place during the 48 hour period. L. & N. R. R. Co. v. John W. O'Neill Co., 204 Ala. 154, 85 Sou. 482; Parker-Bell Lumber Co. v. G. N. Ry. Co., *supra.* Appellee wholly failed to sustain this

burden. Appellee admitted in his petition that the lumber was not removed until after the car reached Buffalo. The proof was uncontradicted that the car was not placed on the Veneer Company's switch until July 18, 1916, five days after its arrival. The fact that Mr. Stengel, the manager and owner of the Buffalo Veneer Company, offered the latter's note in payment for the removed lumber, leads almost inevitably to the conclusion that the Buffalo Veneer Company removed the lumber after the car was placed on its switch, during which time the Erie Railroad Company held same as a warehouseman.

Another reason for a new trial is the fact that erroneous instructions were given and proper instructions were refused. Instruction No. 1 that was given was erroneous in this that it permitted the plaintiff to recover for the entire value of the shipment of lumber, whereas, under no state of case was appellant ever liable for any part of this lumber except such as may have been lost in carriage; and instruction No. 4, offered by appellant, submitted that question to the jury, and it should have been given. Appellant offered instruction No. 5 stating that recovery could be had for no part of this lumber that was delivered in Buffalo, and that the shippers permitted to be sold for charges. Such an instruction should have been given.

The court should have given appellant's instruction No. 6, directing the jury to find for appellant or to allow it credit for the $576.76 claimed by it for freight, storage, demurrage, and advertising; but this sum should have been credited by $140.00, the money for which the lumber was sold.

The questions presented by appellant's offered instructions 7 and 8 have already been considered in this opinion.

The judgment is reversed and the cause remanded for a new trial consistent herewith.